INTERSTATE BUILDING AND LOAN ASSOCIATION
v. W. I. GOFORTH AND WIFE.

No. 953. Decided December 17, 1900.

**1. Homestead—Mechanic's Lien—Wife's Acknowledgment.**

The Constitution and statutes (Constitution, article 16, section 50; Revised Statutes, articles 3304, 4618) do not make void a contract by husband and· wife for fixing a lien on the homestead, through the failure of the officer to properly certify a separate acknowledgment of the contract by the wife, duly taken by him. The lien took effect as between the parties, and the holder could maintain an action within four years to correct the certificate. (Pp. 263, 264.)

**2. Homestead—Mechanic's Lien—Trust Deed—Limitation.**

The Constitution did not prohibit the husband and wife from giving a mortgage or deed of trust on the homestead to secure payment for improvements placed thereon under a contract giving a valid mechanic's lien. The new contract then constituted the indebtedness, and remained valid and enforcible although the certificate of acknowledgment of the mechanic's lien contract was defective and the

right of the creditor to maintain suit to correct it, existing at the time the mortgage contract was made, had subsequently become barred. (P. 264.)

**3. Same—Facts Stated.**

A .husband and wife procured the erection of a house upon their homestead under a written contract duly acknowledged by them as required for fixing a mechanic's lien thereon, but the certificate of the wife's separate acknowledgment was defective; they then procured a building association to pay off the lien, and executed a deed of trust, to secure such association in the amount, as substituted evidence of the original indebtedness. Held, that the trust deed was valid, being given for a lien good at the time, and could be enforced though the right to have the defective certificate corrected had become barred by limitation. (Pp. 261-265.)

**4. Case Distinguished.**

The ruling herein distinguished from Starnes v. Beitel, 20 Texas Civil Appeals, 524, where the right to correct certificate was barred when the lien dependent on it was replaced by the deed of trust. (P. 264.)

**5. Building and Loan Company—Usury.**

A contract by a borrower with a building and loan association is not prima facie usurious because, in addition to full legal interest, it provides for monthly payments upon the borrower's shares of stock in the concern, such contract being, upon its face, a plan analogous to that for discharging indebtedness through a sinking fund, and not invalid unless shown to be a device for evading the usury laws. (Pp. 265, 266.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

The building association sued Goforth and wife and appealed from a judgment allowing their debt but refusing foreclosure of the lien claimed to secure it. Plaintiff appealed, and on affirmance, with reduction of its judgment, obtained writ of error.

*C. A. Keller* and *Mason Williams,* for plaintiff in error.—The court erred in rendering judgment against plaintiff on its prayer to foreclose its lien, for the reason that long before the action to correct said defective acknowledgment was barred by limitation, the defendant executed and delivered to plaintiff said bond and deed of trust which cured any defects in said original contract and acknowledgment thereto. Starnes v. Beitel, 20 Texas Civ. App., 524.

*James Routledge,* for defendants in error.—Suit can be brought to correct a defective certificate from the time that such certificate is made; and limitation begins to run from the time of the making of same. The suit to correct certificate was therefore barred by limitation, and evidence for the purpose of correcting the same was therefore inadmissible. Starnes v. Beitel, 50 S. W. Rep., 202; Norton v. Davis, 18 S. W. Rep., 431; Stone v. Sledge, 24 S. W. Rep., 697; Looney v. Adamson, 48 Texas, 621; Berry v. Donley, 26 Texas, 747; McKellar v. Peck, 2 Posey's U. C., 194; Beitel v. Wagner, 32 S. W. Rep., 367.

The delivery of the bond and deed of trust did not operate as a correction of the certificate of acknowledgment. A certificate of acknowledgment can not be corrected by an instrument which does not purport to be for the correction of the same. Starnes v. Beitel, 20 Texas Civ. App., 524.

A contract which provides that a party who has borrowed $600 shall pay a monthly interest thereon of $3 and a monthly premium thereon of $2.50, and shall further pay 48 cents per month expense fund and $4.56 on dues, and upon which a further sum of $12 had been paid as membership fee or commission, and a further sum of $7 for the same purpose, and which provides that all of said payments shall go to the liquidation of the loan, and that when ninety-six such payments have been made that the loan shall be canceled, is a contract for the loan of money pure and simple, and will be so treated, and as the $3 per month interest and $2 per month premium, making a total of $5 per month, is exactly equal to 10 per cent per year on $600 (the highest interest allowed by law), the payment of said sums of $12 as membership fees or commissions will also be considered as an amount (or interest) paid for the use of the money, and the contract will be declared usurious.

Such a contract as above set forth in appellees' second cross-assignment of error, where the purported payments on stock, dues, and expense fund go towards the liquidation of the debt, will also be held usurious because at the end of the first month the stock payment of $4.56 on dues and 48 cents on expense fund is or should be credited on the principal, thereby reducing it each month, and although the amount of principal reduces each month to the extent of said sum of $4.56 and 48 cents, still the borrower goes on paying $5 per month as interest on the reduced amount, which after the first month exceeds the legal rate, and continues to exceed the legal rate to a greater extent with every month that passes, until when the last payment is due on the last month the borrower pays to the lender the sum of $4.56 due on the principal and 48 cents on expense account, and for the use of said amount of $4.56 and 48 cents pays to the lender the sum of $5 as interest.    Matthews v. Building and Loan Assn., 50 S. W. Rep., 605; Peoples Assn. v. Rising, 34 S. W. Rep., 147; the above case is approved in Investment Co. v. Stone, 46 S. W. Rep., 69; Loan Co. v. Hunter, 35 S. W. Rep., 400; Jackson v. Cassidy, 68 Texas, 283; Abbott v. Building Assn., 25 S. W. Rep., 620; Building Assn. of Dakota v. Griffin, 39 S. W. Rep., 656; Cotton Building v. Reily, 50 S. W. Rep., 961.

BROWN, ASSOCIATE JUSTICE.—On the 5th day of May, 1894, Goforth and his wife entered into a contract in writing with C. H. Shoemaker for the erection of a house upon the homestead of Goforth and his wife, the property in controversy in this suit. The contract was duly acknowledged by the husband and wife before an officer authorized by law to take the acknowledgment, and in every way executed to make it valid and binding upon the wife, but the officer, in making the certificate, did not comply with the statute in taking the wife's acknowledgment. The house having been erected, Goforth and wife made application on the 6th day of August, 1894, to the plaintiff in error that it should purchase the mechanic's lien upon the homestead,

in which application it is recited that there was a bona fide builder's and mechanic's lien on the property duly created and executed in conformity with the Constitution and laws of the State of Texas. The application also contains an agreement that the association should be subrogated to the rights, securities, and equities of the contract and the lien. At the same time, a bond was given by Goforth and wife to the plaintiff in error for the payment of the sum of $600, and to secure that bond, a deed of trust was executed in favor of the said plaintiff in error upon the land in controversy with power to sell the land in case of failure to pay the bond. The bond and deed of trust recited the same facts with regard to the builder's lien that were contained in the application made to the association, and it was recited that the bond and deed of trust should be substituted evidence in a new form of the original indebtedness represented by the said contract and lien. It was agreed that the contract and lien and all evidence thereof should be assigned and transferred to the association, which was done, and it was stipulated that in case the deed of trust or bond should be held void for any purpose, the mechanic's lien should be valid and subsisting upon the property until the money borrowed should be paid.

The application to the plaintiff in error to buy the lien contract, the bond given to it to secure the money loaned, and the deed of trust upon the property, were all acknowledged by the husband and wife as required by law to bind the wife and the acknowledgments duly certified by an officer authorized by law to do so.

Goforth and his wife failed to make payments as stipulated and the trustee sold the land; the building association bought it and sued in trespass to try title, but it was changed to an action to recover the money and foreclose the mechanic's lien, to which the defendant pleaded that the contract was usurious and the mortgage invalid. We copy from the findings of the Court of Civil Appeals as follows: "When the original building contract between appellees and Shoemaker was first contemplated and entered into, Mr. Goforth applied to the agent of appellant for a loan of $600 for the purpose of paying Shoemaker the contract price for erecting the building. He was informed by appellant's agent that in order to obtain the loan he must become a member and stockholder of the association. Whereupon he paid an admission fee of $7 and subscribed for six shares of stock of $100 each. He became a member and stockholder of the association with the latter's knowledge, solely for the purpose of obtaining the loan, and with his wife executed a contract or bond to the appellant for $1200, by which it was provided that at the request of appellees, appellant had purchased a certain mechanic's lien note for $600, and had extended the indebtedness under the rules and regulations of the association, with interest thereon at the rate of 6 per cent per annum computed on the mutual building and loan plan. By the bond, W. I. Goforth bound himself to pay the association on the fourth Wednesday of each month in each year after its date $4.56 as a monthly installment

of dues in six shares of stock, together with 48 cents as an additional assessment on said shares for the benefit of the expense fund of the association, and also to pay at the same time in each month and year the sum of $2 as a monthly premium on said advance, and the further sum of $3 monthly as interest on said advance, and to continue to make each and every of said payments of installments and assessments on stock and of principal and interest on the amount of the advance monthly in each and every month for and until such time as said shares of stock shall fully mature or until the monthly payments so made shall aggregate ninety-six in number."

The case was tried by the court without a jury and judgment was entered in favor of the defendants for the land and against W. I. Goforth for the sum of $562.23, but the foreclosure of the lien claimed by the plaintiff was refused. The judgment was affirmed as to the refusal to enforce the lien, reversed and rendered by the Court of Civil Appeals against W. I. Goforth for the sum of $271.80, that court holding that the contract was usurious and the original amount of the loan was reduced by the payments made thereon.

Article 16, section 50, of the Constitution, provides: "The homestead of a family shall be and is hereby protected from forced sale for the payment of all debts, except for the purchase money thereof or a part of such purchase money, ·the taxes due thereon, or for work and materials furnished in constructing improvements thereon, and, in this last case, only when the work and material are contracted for in writing with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead. * * * No mortgage, trust deed, or other lien on the homestead shall ever be valid except for the purchase money therefor or improvements made thereon as hereinbefore provided." The manner in which a contract for improvements upon a homestead shall be executed is prescribed by article 3304 of the Revised Statutes in the following words: "When material is furnished, labor performed, erections or repairs made upon the homestead, if the owner thereof is a married man, then to fix and secure the lien upon the same, it shall be necessary for the person or persons who furnish the material or perform the labor, before such material is furnished or labor is performed, to make and enter into a contract in writing, setting forth the terms thereof, which shall be signed by the owner and his wife and ·privily acknowledged by her as required in making sale of homestead." The requisites of an acknowledgment by a married woman to a conveyance of her separate property or homestead are prescribed by article 4618, Revised Statutes, as follows: "No acknowledgment of a married woman to any conveyance or other instrument purporting to be executed by her shall be taken unless she has had the same shown to her and then and there fully explained by the officer taking the acknowledgment on an examination privily and apart from her husband; nor shall he certify to the same unless she thereupon acknowledges to such officer that the same is her act and

deed and that she has willingly signed the same and that she wishes not to retract it." It is not denied that the officer who took the acknowledgment of Mrs. Goforth to the building contract made by herself and husband with C. H. Shoemaker complied in every respect with the requirements of the statute in taking her acknowledgment, but in making his certificate he failed to state some of the facts necessary to make the certificate admissible as evidence of the acknowledgment. The failure to properly certify the acknowledgment did not render the contract void, but it took effect as between the parties from the time the proper acknowledgment was taken before the officer. Johnson v. Taylor, 60 Texas, 360. Shoemaker could have maintained an action against Goforth and his wife at any time within four years from the making of the contract for the correction of the certificate, and, upon a decree being entered to that effect, the evidence of the acknowledgment would be supplied. The Constitution and statutes do not make the validity of the lien depend upon the fact of a certificate being made, or its form. It follows that the contract with Shoemaker held a valid lien upon the lot in controversy when the deed of trust was made.

Under the section of the Constitution before quoted, Goforth and wife were not prohibited to make a mortgage or deed of trust upon the homestead to secure the payment of money expended in the improvement of it, the contract being in writing, executed in the manner prescribed by that section, and duly acknowledged as required for the conveyance of homesteads. Lippencott v. York, 86 Texas, 279. The deed of trust executed by them is valid, and the court erred in refusing to foreclose it.

In the case of Starnes v. Beitel, decided by the Court of Civil Appeals for the Fourth District, 20 Texas Civil Appeals, 524,—in which this court refused an application for a writ of error,—a similar state of facts existed, except that when the deed of trust was made by Starnes and his wife, the right of action to correct the certificate of acknowledgment was barred by limitation, and there being no evidence to establish the contract, the lien was discharged by limitation and Starnes and wife had no power to make a deed of trust to the homestead because there was no valid lien to support it. Milburn v. Walker, 11 Texas, 344; Fuller v. Oneal, 82 Texas, 422; Wofford v. Unger, 55 Texas, 484. It is settled in this State that when a debt becomes barred by limitation and there is a renewal of it, the new contract constitutes the indebtedness and the old debt is the consideration to support the new promise. Coles v. Kelsey, 2 Texas, 549; Howard v. Windom, 86 Texas, 565.

The trial court erred in excluding the evidence of the notary public, Heard, by which it was sought to show that the acknowledgment of Mrs. Goforth to the building contract made with Shoemaker was in fact properly taken, but the certificate was improperly made. The evidence was admissible in order to establish the validity of the mechanic's lien, which was a material matter and necessary to sustain the deed of

trust upon the homestead. As this testimony was not admitted, this court can not enter judgment foreclosing the lien, but, reversing the judgment for the error of excluding the evidence, the case must be remanded for further proceedings. In view of another trial, we think it proper to express our views upon the cross-assignment presented by the defendants in error, which raises the issue of usury in the contract between Goforth and his wife and the plaintiff in error. The trial court held the contract to not be usurious, but the Court of Civil Appeals reversed that judgment and rendered judgment for the sum, less all payments of interest, premiums, etc., holding the contract to be usurious and allowing no interest upon the loan.

The contract is not upon its face usurious, and, from what we are able to gather from the evidence, there was no extraneous testimony which tended to prove it to be so in fact, but the defendants in error may be able, upon another trial, to establish their plea, and we shall therefore express our views of this contract as a guide to the court in trying the case hereafter.

The premium of $2 per share and the sum of $3 per share, which was expressed to be for interest, were properly held to constitute interest, and amounted to 10 per cent per annum on the whole sum loaned. The payments monthly of premiums upon the shares of stock amounting to $5.04 on each share per month, did not, under the terms of the contract, constitute a present payment on the debt, but made provision for the future payment by providing a sinking fund through the means of these monthly installments, which fund was pledged as collateral security for the money loaned, but until ninety-six payments should be made or each share of stock should become of the value of $100, the application of payment was not made to the debt. There is nothing in the terms of the contract to show that this was not a fair and honest scheme on the part of the loan company whereby it would further secure the loan made by selling to the borrower an interest in its business to the extent of six shares for the period of ninety-six months, and upon which, by the terms of the contract, the borrower must necessarily receive an advantage to the extent of the difference between the amount paid on the stock and the sum of $600. Ninety-six payments of $5.04 each aggregate $483.84, which being deducted from $600, leaves $116.16, which the borrower would receive as compensation for the use by the company of the monthly installment payments. By the terms of the contract, the debt would be discharged by the maturity of the stock before the ninety-six payments should be made, thereby securing participation even in the uncertain gains that might be derived from the use of the money. This is analogous to the plan that our law provides for the payment of municipal bonds which bear interest upon the whole debt for the entire period of time, and a sinking fund is created by annual payments which may be invested in other interest-bearing securities. By this contract, the return upon the sinking fund is not uncertain, but secured by a reduction of the debt itself. In ad-

dition, the borrower had the privilege at any time after one year from the date of the loan to discharge the debt, receiving credit for the value of the stock upon which his premium had been paid, to be ascertained by "computing the amount of the monthly payments into the loan fund on said shares at the joint rate of interest and premium paid on said advances." This language is somewhat ambiguous, but it necessarily secures to the borrower the advantage of at least 6 per cent on all the sums paid by him as premiums on the shares of stock to be counted from the date of each payment to the date of settlement.

This is a legitimate subject of contract for the parties, if it was in fact what it purports to be upon its face, and the contract is not, as a matter of law, obnoxious to the charge of usury. If, however, upon another trial, Goforth and his wife shall produce evidence that the terms of this contract were adopted as a device for evading the usury laws of the State, it will be proper for the trial court to submit to the jury the question whether the contract is tainted with usury; otherwise, that question should not be submitted, but the court should hold, upon the face of the contract itself, that it is not subject to that defense.

For the error before stated, the judgments of the District Court and the Court of Civil Appeals are reversed, and this cause is remanded for further trial.

*Reversed and remanded.*