GUARANTEE SAVINGS, LOAN & INVESTMENT Co. v. MRS. J. W. MITCHELL.

Decided April 26, 1905.

**1.—Usury—Stock in Investment Company—Loan.**

Where M. subscribed for stock in a loan and investment association, agreeing to pay for the same in monthly installments, receiving in return dividends and certain loan privileges, and at the same time applied for a loan secured by a mortgage and a pledge of the stock subscribed for, such transaction could not be condemned as a usurious contract, because M. entered into it solely to secure the loan, unless the association also intended that he should not become a shareholder, and was using the contract as to taking stock merely as a device to cover usury.

**2.—Same—Principal and Agent—Representations not Binding.**

Where the agent of the investment association had no authority to make a certain verbal agreement with a borrowing subscriber for stock, his act in so doing can not be held the act of the association unless knowledge thereof was brought home to it and was acted on by it.

Appeal from the District Court of Cooke. Tried below before Hon. D. E. Barrett.

*Hill & Dabney,* for appellant.—1. A member of a building and loan association may at the same time be a stockholder and a borrower. If the association has in fact and in good faith constituted him a stockholder, the fact that he pays interest on his loan at the highest legal rate in addition to payments on stock, does not render the transaction usurious, although the sole object of the member in taking stock was to borrow money, and such intention was known or might have been known by the association. Abbott v. Association, 85 Texas, 220; Interstate Building & Loan Assn. v. Goforth, 59 S. W. Rep., 871; Cotton States Building Co. v. Jones, 62 S. W. Rep., 741; Association v. Lane, 81 Texas, 369; Griffin v. Association, 39 S. W. Rep., 658; Sweeney v. El Paso Assn., 26 S. W. Rep., 291; Blakely v. Association, 26 S. W. Rep., 294; Price v. Kendall, 36 S. W. Rep., 811, 812; Association v. Everhart, 44 S. W. Rep., 887; Interstate Assn. v. Bryan, 54 S. W. Rep., 377; National Loan Co. v. Stone, 46 S. W. Rep., 69, 70; Peightal v. Cotton States Assn., 61 S. W. Rep., 431; Association v. Marston, 69 S. W. Rep., 1034; People's Assn. v. Leary, 49 S. W. Rep., 633; Cotton States Bldg. Co. v. Rawlins, 62 S. W. Rep., 805; Giesberg v. Association, 60 S. W. Rep., 478.

2. The authority of an agent to bind his principal is limited by the nature and extent of his agency, and if limited in writing by the principal, his authority is circumscribed and bounded by the writings. Fitzmaurice v. Mut. Life Ins. Co., 84 Texas, 64; Association v. Hunter, 51 S. W. Rep., 530; Jones v. Risley, 91 Texas, 1; Faires v. Cockrell, 88 Texas, 431; Jones v. Gilchrist, 88 Texas, 88.

*Culp & Giddings,* for appellee.—1. Since the evidence was ample to show that the subscription to stock and the certificate of stock and recitals in the trust deed and other documents was but a scheme and device to cover up a loan at usurious rates of interest, and that it was understood and agreed between plaintiff's husband and defendant's agent, that Mitchell was not to be a stockholder in the company, and that the alleged "stock payments" were not to be in fact stock payments, but were to be credited on the loan and since the interest payments and "stock payments" exceeded 10 percent, the contract was usurious. Building & L. Assn. v. Peightal, 61 S. W. Rep., 428; Building & L. Assn. v. Kellar, 50 S. W. Rep., 186; Waters v. Building & L. Assn., 68 S. W. Rep., 537; Building & L. Assn. v. Daugherty, 66 S. W. Rep., 134; Building & L. Assn. v. Marston, 5 Texas Ct. Rep., 700; Rawlins Case, 6 Texas Ct. Rep., 206; Thompson Case, 58 S. W. Rep., 203.

2. The undisputed evidence showed that Howeth was defendant's local agent and represented it in the transaction, and was acting within the scope of his authority at the time the representations were made.

See cases cited above, and also, People's B. & L. Assn. v. Dailey, 42 S. W. Rep., 365.

FLY, Associate Justice.—Appellee instituted this suit against appellant, ·alleging that on or about February 1, 1900, she and her husband, since deceased, borrowed $1,200 from appellant, which was to be repaid in twelve years, with interest at ten percent per annum. That the money was lent to appellee and her husband under the agreement that they should pay appellant the sum of $16 a month, and that, realizing that said sum would be usurious, it was agreed that appellee and her husband should execute to appellant their note and other papers as a scheme and device to cover up and conceal the usury. Appellee prayed that the transaction be declared usurious, and that the payments be applied to the principal of the loan and all interest be declared forfeited; that the sum of $620, which was tendered into court, be declared all that was due by appellee, and that a deed of trust on the property be cancelled and cloud removed from her title. Appellant answered, denying the making of any agreement except that evidenced by the application for the loan, note and deed of trust, and denied that there was any usury in the transaction. The jury found for appellee, and the court rendered judgment declaring the contract usurious, that $582 dollars had been paid on the loan, that $618 was due on the loan of $1,200 by appellee, and that, when the same was paid into court, the lien on certain land in the city of Gainesville, Texas, be canceled and discharged.

On January 29, 1900, James W. Mitchell, the deceased husband of appellee, applied in writing for membership in the company, appellant herein, and agreed to subscribe for twelve instalment shares, and to pay therefor the sum of six dollars monthly. for one hundred and forty-four months, and agreed to abide by all the by-laws. Upon the face of the application appeared the following stipulation: "No agent has authority to promise loans except on written authority from the secretary of the company, under the seal thereof; no agent or solicitor of this company has any authority to collect or receive any money from the members except the first two monthly payments." The following certificate for shares was sent to James W. Mitchell: "No. 5377; number of shares, 12; maturity value, $1,200; dated February 1, 1900; signed by the president and secretary of defendant company and sealed with its seal, and providing that, in consideration of the written and printed application of James W. Mitchell, who is hereby constituted a member of the Guarantee Savings, Loan & Investment Co., a corporate body, said member is entitled to receive $1,200 at the expiration of one hundred and forty-four months from date, and hereby promises full compliance with the terms and conditions contained in said application herefor, and the conditions herein set forth, and on the succeeding page hereof, all of which, taken together in their entirety, shall constitute this contract, and in consideration of the above terms and conditions, together with the payments herein required, said company agrees to pay said member, or his heirs or assigns, the sum of $1,200 as above stated, or, in case of his death or withdrawal before that time, the company will pay the withdrawal value of the certificate as agreed herein, payable at the home office of the company at Philadelphia, Pa., on thirty days' notice."

On the back of the certificate appeared the following printed endorsement, which was signed by Mitchell on February 16, 1900: "The within mentioned shares of stock in the Guarantee Savings, Loan & Investment Co., are hereby withdrawn, and I have this day received the sum of —— dollars in full of the amount due me by reason of such withdrawal."

Among the conditions referred to in the certificate the following appeared: "That all persons desiring to become members of the company shall sign and deliver to the secretary an application on the form required by the board of directors, which shall be a part of the contract with the company. That the holder shall have the privilege of applying for a loan to the par value of the certificate upon making proper application therefor and giving security satisfactory to the company. After the certificate shall have been in force one year the holder shall be entitled to a loan of fifty percent of the amount paid in thereon upon giving proper note and depositing the certificate as collateral security."

Also the following conditions: "This certificate may be withdrawn any time after same has been in force thirty-six months, and thirty-six payments made thereon, with interest at the rate of six percent after three years, seven percent after four years, and eight percent after five years, by giving sixty days' written notice to the principal office. But the company shall not be required to pay to withdrawing members during any one year more than one-half the net receipts of that month. Against this certificate shall be charged annually, in advance, one percent of the par value thereof, which shall be deducted from the withdrawal value in case of surrender before maturity. No agent or solicitor of the company has authority to collect or receive any money except the first two months' dues of one dollar per share, nor to contract any debt or obligation, to promise loans, to pass upon the value or sufficiency of security for proposed loans, or to bind the company in any manner except on written authority under the corporate seal."

On January 29, 1900, at same time of applying for membership, Mitchell made application for a loan of $1,200, and described the real estate offered as security, and also offered twelve shares in the company as collateral security for the loan. He agreed to pay ten percent per annum for use of the money. A deed of trust of February 1, 1900, was executed by J. W. Mitchell and wife, S. F. Mitchell, to J. J. Orchard. on the lots in Gainesville to secure the loan. R. B. Howeth, a witness for appellee, swore that he represented appellant in negotiating the loan with J. W. Mitchell, and was their local agent; that he told him that the company would not lend money to anyone except a stockholder; that he was to pay $16 a month, $10 interest and $6 on the stock, and that the stock payments were to be applied on the principal at any time he wanted to pay it off. On cross-examination he said: "I told Mr. Mitchell that these payments of $6 per month which he was to make could be applied by him as a part payment upon his loan whenever he wished to pay the loan off. That was the statement made to him. I don't think he understood that when he paid $6 that would reduce the principal to $1,194, but that any time he wanted to pay off the principal the stock payments would be applied as far as they would go. My authority was Mr. Orchard, the state agent, and the literature of the company. I told

Mr. Mitchell that his stock payments, any time he wanted to repay his loan, would apply to the principal of his debt as far as they would go. If he did not pay his loan off until after thirty-six months the company would allow him six percent interest for the average time; after forty-eight months, seven percent; after sixty months, eight percent interest. Not only the stock payments, but the interest after that time, would be applied to the payment of the principal of his debt. I don't remember any talk with Mr. Mitchell in the presence of Mrs. Mitchell about this. I told Mr. Mitchell that he had to be a shareholder before he could borrow money. I did not tell Mr. Mitchell that subscribing for stock was only a form, and that all payments were to be applied to the loan. I don't know that I ever saw a copy of the by-laws like this (referring to one shown him by defendant's attorney). I had some literature in the office which is in different forms from this. I did not tell him that these payments of $6 would be applied each month to the reduction of the loan. I told him any time he wanted to pay the loan off the $6 would be applied with interest by the company up to the time of repayment." Appellee swore that Howeth had represented that subscribing for the stock was a mere matter of form; that no payments would be credited on the stock but would be credited on the loan.

The secretary of the company, who resided in Philadelphia, Pennsylvania, swore that the stock was sold by the company in good faith to J. W. Mitchell; that the monthly payment of six dollars made by him was credited to the stock account, which was a separate account from the interest account. On the first thirty-six payments a dividend of $19.44 was declared, and that sum had been entered on the stock account. On shares in force for three years six percent was apportioned as profits; on those for four years seven percent, and on those for five years eight percenn, and after that the additional earnings were apportioned until the stock, with the earnings thereon, amounted to $100 a share. No difference was made between owners who were borrowers and those who were not, in the apportionment of profits. The witness testified that the only letter he got about the loan was from J. J. Orchard, the state agent, and that did not disclose anything about representations made by Howeth to Mitchell. The certificate of stock was given to Mitchell, and was deposited by him with the company as collateral.

Appellant asked the court to give the following charge: "You are instructed that a person may become a borrower in a building and loan association, and at the same time become the owner of stock therein, and that the fact that the inducement to become such stockholder is the purpose of obtaining a loan of money from such association will not render such loan usurious, provided such association in fact intends that such borrower shall in good faith become a stockholder therein, and does in good faith treat such borrower as a stockholder in such association, and does actually apply the payments made by him upon his stock subscription upon such stock, and not as payments upon his loan. A person may at the same time become a borrower and a stockholder in a building and loan association, if such relations are entered into in good faith by such association, with the intention that such person shall in fact become a stockholder. In the case before you the rate of interest charged

by defendant upon the face of the instruments is ten percent, and such loan is not upon its face usurious. You are charged that the loan in question is not usurious unless it becomes so by means of the subscription for stock made by J. W. Mitchell to defendant company, and the payments made thereon. If, therefore, you find and believe from the evidence before you that the defendant company, in taking a subscription for stock from J. W. Mitchell, in good faith intended that he should become a stockholder in said company, and that defendant did constitute said Mitchell a stockholder therein, and did apply the payments stipulated by the certificate issued him upon such stock, and not in reduction or partial payment of the loan, then you will find for defendant, though you may find and believe from the evidence that it was not the intention of J. W. Mitchell to become a stockholder in defendant company, or though you may find from the evidence that the only intention of said Mitchell, in subscribing for shares in defendant company, was to obtain a loan. If, however, you find from the evidence that, in taking a subscription for stock from J. W. Mitchell, defendant did not in good faith intend that he should become a stockholder therein, and that said Mitchell did not in fact become such a stockholder, and you find that defendant did not intend that the payment made by Mitchell upon his purported stock subscription should be, in fact, applied as payments on stock, but you find from the evidence that such purported taking of stock was a mere device or scheme whereby defendant intended, by obtaining partial payments on the loan in monthly instalments, under the guise of stock, to obtain interest for the use of the sum loaned greater than ten percent per annum thereon, then such loan would be usurious, and you will find for plaintiff." That charge embodied the law of the case made by the facts, and the court erred in refusing to give it. There is nothing in the terms of the contract that evidences anything but a legal transaction between the parties, the object appearing therefrom being that it was a business scheme to obtain interest on a loan at a legal rate, and at the same time sell stock in the business, which would be held as additional security for the loan. It would not matter that the only intention that J. W. Mitchell had in taking the stock was to borrow money, and the transaction would not be usurious thereby unless it was shown that the company did not intend that Mitchell should become a shareholder, and that the selling of the stock was merely a cover for usurious interest. (Building & Loan Assn. v. Goforth, 94 Texas, 259; Association v. Crawford, Texas Civ. App., 63 S. W. Rep., 1071; Association v. Rawlins, Texas Civ. App., 62 S. W. Rep., 805; Association v. Leary, 49 S. W. Rep., 633; Geisberg v. Association, Texas Civ. App., 60 S. W. Rep., 478.)

The court instructed the jury as follows: "Now, if you believe from the evidence that, at the time J. W. Mitchell applied to defendant for a loan, and signed up the application for twelve shares of stock therein, and agreed to pay $6 on said shares, it was his purpose, in applying for said stock, to simply obtain a loan, and that it was not his purpose to take said stock as an investment therein, and that it was the understanding between him and the agent representing defendant in the transaction that he was not to become a bona fide subscriber to said stock, and, if his purpose in subscribing for said stock simply for the purpose of

obtaining the loan was known at said time, and participated in by said agent, the loan would be usurious, and you will find for the plaintiff." It was claimed by appellant that Howeth, under its by-laws, had no authority to make any contract for the company other than to receive the application for membership, and for a loan, and forward the same to the headquarters of the company, but the charge of the court made the act of the agent, in making representations to Mitchell, the act of the company, regardless of his authority to so bind the company and regardless of whether the company was notified of his action or not. If the agent had no authority to make the verbal contract that he did, it can not be held to be the act of the principal unless knowledge of it was brought home to the principal and was acted on by it. There is not a circumstance in the record that tends to show that the company had any knowledge of the contract made by Howeth, and the evidence tends to show that he did not have authority to make any kind of contract as to loans. There is nothing in the evidence that tends to show that the six dollars a month was appropriated as a payment on the loan, but, on the other hand, the proof is that it was credited to the stock account, and, when an account was rendered, the withdrawal value of the stock was given, and the whole sum credited on the loan as of date of rendering of the account.

Evidence as to the representations made by Howeth to Mitchell was admissible, but, if he had no authority to bind the company thereby, and the company did not participate in his illegal act, it can not be bound by the representations. It must in some way be connected with the representations or they are not its representations, but those of Howeth alone.

The deed of trust was properly admitted in evidence. There was no substantial variance between it and the instrument set out in the petition. The judgment is reversed and the cause remanded.

*Reversed and remanded.*