**PIONEER BUILDING & LOAN ASS'N v.
JOHNSTON et al.**

No. 1985.

Court of Civil Appeals of Texas. Waco.

March 24, 1938.

Rehearing Denied May 12, 1938.

Street & Street, of Waco, for appellant.

A. C. Johnston and John B. Atkinson, both of Waco, for appellees.

ALEXANDER, Justice.

This suit was brought by A. C. Johnston and wife against Pioneer Building & Loan Association to cancel the notes and deeds of trust evidencing two separate loans and to restrain a sale of the mortgaged property under the powers given in the deeds of trust. Johnston contended that the loan contracts were void because of fraud in the procurement thereof, in that the loan company had misrepresented the rate of interest that the contracts would bear. He also contended that the contracts were usurious and that payments made as interest were sufficient to discharge and overpay the balance of the unpaid principal. There were two loan contracts, one of date January 1926 for $1,000.00, and the other of date September 1926 for $1,990.00. Each of the loan contracts provided for interest at the rate of 9 per cent per annum and for certain fines and penalties usual in building and loan contracts. The jury, in answer to special issues, found that prior to the making of the loan contract in January, 1926, the defendant represented to plaintiff A. C. Johnston that under the defendant's plan of operation the rate of interest charged would not exceed 7½ per cent per annum, and that plaintiffs would not have entered into said contract but for such representations. The jury further found that the plan used by the defendant in the preparation of its loan contracts was so used for the purpose of enabling it to charge more than ten per cent for the use of its money. Based on the verdict, the court entered judgment for the plaintiffs, adjudging said contracts to be usurious, declaring the defendant's debt fully paid, cancelling the liens, and restraining a sale of the property under the powers given in the deeds of trust. The court also entered a money judgment in favor of the plaintiffs against the defendant for the sum of $279.26 for overpayments made on the loan contracts. The defendant appealed.

■ Johnston's proof of alleged fraud in misrepresenting the rate of interest to be borne by the loan contracts consists of his own testimony. He testified, in effect, that a few days before the first loan contract was closed he visited the office of the loan company to discuss the procurement of a loan and was informed that under the loan company's plan of operation the rate of interest charged by it would not exceed 7½ per cent per annum. Thereafter, he furnished an abstract of title for examination and a few days later went back to the loan company and signed the loan papers and closed the loan. The note on its face provided for interest at 9 per cent per annum. Johnston was a lawyer and experienced in handling loan matters. He testified that at the time of closing the loan he was suffering from a disability, as the result of a previous automobile accident, and, as a consequence, he could not read very well; that he could have read the rate of interest stipulated in the note but that he did not do so because he was relying on the previous representation of the loan company that under its plan of operation the interest rate would not exceed 7½ per cent per annum. It will be noted that Johnston's testimony related wholly to a representation made to him in the prior negotiations and that he did not testify to any misrepresentation having been made at the time of entering into the contract. In fact, the jury did not find that any misrepresentation was made by the loan company as to the contents of the written instrument signed by Johnston, but merely found that prior to the execution thereof the loan company had misrepresented the interest charged under its plan of operation. There was no proof offered as to any misrepresentations having been made at the time the loan papers were signed. In fact, it was not contended either in the pleadings or in the evidence that the contents of the document executed by Johnston were misrepre-

sented or that any fraud or imposition was resorted to to prevent his being advised as to the contents of the contract. The above evidence, in our opinion, was insufficient to raise an issue authorizing the setting aside of the contract on account of fraud. Whatever oral negotiations were had between the parties at the first conference were presumed to have been waived or embodied in the written contract when finally executed by Johnston. In the absence of proof of fraud misleading Johnston as to the contents of the written contract actually executed by him, and in the absence of proof of any conduct on the part of the loan company, or its representatives, that prevented Johnston from informing himself as to the contents of such instruments, he is presumed to have known the contents thereof and therefore is not entitled to have such instruments cancelled. 7 Tex. Jur. 922; 10 Tex.Jur. 366; Duncan v. Robertson, Tex.Com.App., 105 S.W.2d 214; Indemnity Ins. Co. v. Macatee & Sons, Tex. Com.App., 101 S.W.2d 553; Parker v. Schrimsher, Tex.Civ.App., 172 S.W. 165; Distributors Inv. Co. v. Patton, Tex.Com. App., 110 S.W.2d 47.

■ Johnston was likewise the only witness who attempted to testify to any fraud with reference to the second loan contract executed in September, 1926. In this connection, he testified that the representative of the loan company had told him in the preliminary negotiations that he could let him have a second loan at the same rate as the previous one; that when he went to execute the loan papers, he discovered that they provided for interest at 9 per cent per annum, and upon calling the matter to the attention of the loan company, he was informed by the company's representative that the contract had been prepared that way merely "as a matter of form." As we understand the law, a party who, for a valuable consideration, has signed a written contract with full knowledge of its contents cannot afterwards successfully contend that there was a contemporaneous parol agreement that the terms of the written contract should not be binding. 17 Tex.Jur. 792; 7 Tex.Jur. 922; 10 Tex. Jur. 98, 99; Guarantee Life Ins. Co. v. Davidson, Tex.Com.App., 234 S.W. 883; Parker v. Schrimsher, Tex.Civ.App., 172 S.W. 165; Kasch v. Farmers' Gin Co., Tex. Com.App., 3 S.W.2d 72; McGaughey v. American National Bank of Austin, 41 Tex.Civ.App. 191, 92 S.W. 1003; Duncan

v. Robertson, Tex.Com.App., 105 S.W.2d 214; Indemnity Insurance Co. v. Macatee & Sons, Tex.Com.App., 101 S.W.2d 553; Ætna Ins. Co. v. Holcomb, 89 Tex. 404, 34 S.W. 915; Morrison v. Insurance Company of North America, 69 Tex. 353, 6 S.W. 605, 5 Am.St.Rep. 63.

■ The defendant was a building and loan association incorporated and operating under pertinent provisions of our statutes authorizing the creation and operation of building and loan associations. Johnston was a borrowing member thereof, and, as a part of his loan contract, was required to purchase stock in the association and to pledge same as security for the loans. The association's by-laws, which were made a part of the loan contract, provide that any holder of loan stock who failed to make the required payment due on or before the expiration of the due date thereof should "be fined one per cent per month on each dollar in arrears." It is contended that this provision authorized the lender to receive more than ten per cent per annum for the use of its money, and, as a consequence, the contract was usurious. The above noted provision authorizing the assessment of fines for delinquencies was authorized by R.S. art. 869, and therefore such provision did not render the contract usurious. Hatcher v. Continental Southland Savings & Loan Ass'n, 124 Tex. 601, 80 S.W.2d 299; Wood v. Continental Savings & Building Ass'n, Tex.Com.App., 56 S.W.2d 641; Farm & Home Savings & Loan Ass'n v. Muhl, Tex.Civ.App., 37 S.W. 2d 316; Geisberg v. Mutual Building & Loan Ass'n, Tex.Civ.App., 60 S.W. 478; Interstate Building & Loan Ass'n v. Goforth, 94 Tex. 259, 59 S.W. 871.

From what has been said, it is apparent that the notes in question did not provide for a usurious rate of interest, and the debtors are not entitled to defeat the creditor's right to enforce its lien on account of any fraud in the procurement thereof.

■ The payments which have been made on the notes are not sufficient to fully discharge same, and consequently the trial court wrongfully granted the temporary injunction restraining the association from selling the mortgaged property under the powers given in the deeds of trust. It is appellees' contention that although the temporary injunction was wrongfully granted, the debt is now barred by limitation and the association cannot sell under

the deeds of trust to satisfy a barred debt. The trial court sustained this view, and, in reliance thereon in part, granted a permanent injunction restraining such sale. The record discloses that on account of delinquencies in meeting the monthly payments, the association declared, the entire indebtedness due March 15, 1930, and immediately posted notices of sale of the property under the powers given in the deeds of trust. Thereupon, Johnston and wife brought this suit and procured the issuance of a temporary injunction restraining such sale. This temporary order remained in force until final judgment was entered making the temporary injunction permanent. Such permanent injunction has remained in force pending this appeal. It thus appears that the association has been enjoned from selling the property under its deeds of trust continuously from the time the right accrued until this date. The association did not reconvene herein and seek a personal judgment for its debt with foreclosure through the courts, nor did it file an independent suit to enforce such rights. Its debt is now more, than four years past due, and since the injunction restraining the sale under the deeds of trust did not prevent a suit to recover on the debt and to foreclose the liens through court, such debt and the right to so foreclose the liens is now barred by the four year statute of limitations. R.S. arts. 5523, 5520, as amended Vernon's Ann.Civ.St. arts. 5520, 5523; Davis v. Andrews, 88 Tex. 524, 30 S.W. 432, 32 S.W. 513. The debtors now insist that since the debt secured by the liens is barred by limitation, the right to enforce payment of same through sale under the deeds of trust is likewise barred. R. S. art. 5520, as amended, Vernon's Ann.Civ.St. art. 5520, provides, in part, that "no power of sale conferred by a deed of trust or other mortgage on real estate * . * * shall be enforced after the expiration of four (4) years from the maturity of the indebtedness secured thereby." A strict and literal application of this statute would bar the right to sell the property under the deeds of trust at this time. It appears, however, that the creditor has been continuously restrained from the exercise of such powers of sale since the accrual of the right thereto by an injunction wrongfully procured by the debtors. It is a well established rule in equity that where a party has been prevented from the exercise of a lawful right by the pendency of legal proceedings, the time during which he is thus prevented should not be counted in determining whether limitation has barred such right. This rule is based on the maxim that "the act of the court shall do no prejudice." 37 C.J. 1039; Cavitt v. Amsler, Tex.Civ. App., 242 S.W. 246, 249, par. 7; Davis v. Andrews, 88 Tex. 524, 30 S.W. 432, 32 S. W. 513. Under such rule, it is generally held that where the exercise of a lawful right is restrained by injunction, the statute of limitations is tolled during the period of such restraint on the theory that the party who has obtained the injunction has, by an abuse of the process of the court, obtained an unconscionable advantage which he ought not to be permitted to enjoy. 28 Tex.Jur. 242–244; 37 C.J. 1045; Converse v. Davis, 90 Tex. 462, 39 S.W. 277; Williams v. Pouns, 48 Tex. 141. Johnston contends that the filing of the suit by him and enjoining the sale under the deeds of trust did not prevent the association from suing on its debt and seeking foreclosure through the courts, and since the association could have prevented the running of limitation on its debt by such procedure, the association is not entitled to invoke the equitable rule above referred to. It will be noted, however, that the association had the contractual right to have the property sold under the powers given in the deeds of trust, and it was not required to abandon this right and resort to the alternative remedy of foreclosing through the courts. The debtors could not, by the wrongful procurement of an injunction, force the association to waive its right to sell under the deeds of trust and seek foreclosure through the courts. Such a rule would permit a party, by his own wrongful conduct, to destroy the lawful contractual rights of his adversary, and is therefore unsound. Manes v. J. I. Case Threshing Machine Co., Tex.Civ.App., 295 S.W. 281.

█ The debtors further contend that the association has been guilty of laches, such as to destroy its right to sell under the deeds of trust. In this connection, it is not contended that an unreasonable time has elapsed since the dissolution of the injunction, for the injunction has not yet been dissolved, but it is contended that the creditor should have brought about a dissolution of the unlawful injunction at an earlier date. The debtors are hardly in position to

invoke the equitable doctrine of laches under these circumstances. They are directly responsible for the issuance of the unlawful injunction and the delay incident thereto, and if they did not move for an earlier dissolution of the injunction, they cannot complain of similar conduct by their adversary. We hold that appellant's right to sell the property under the powers given in its deeds of trust for the balance of its indebtedness is not barred by limitation.

It appears that the case has been fully developed and that no useful purpose would be served in remanding it for another trial. Therefore, the judgment of the trial court is reversed, the injunction is dissolved, and judgment is here rendered that plaintiffs take nothing.