

# NUMBER 13-06-00041-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**JAMES HLAVINKA**,                                                   **Appellant,**

**v.**

**BESSIE HLAVINKA, INDIVIDUALLY
AND ARNOLD HLAVINKA,
AS TRUSTEE OF BESSIE, HLAVINKA,**                     **Appellees.**

## On appeal from the 23rd District Court of Wharton County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Vela and Wittig[1]
### Memorandum Opinion by Justice Wittig

James Hlavinka appeals a summary judgment entered on behalf of appellees, Bessie Hlavinka, individually, and Arnold Hlavinka, as trustee of Bessie Hlavinka in a dispute over oil and gas interests. We affirm the summary judgment.

---

[1]Retired Justice Don Wittig, assigned to this Court by the Chief Justice of the Supreme Court of Texas, pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (Vernon 2005).

## I.  Background

The summary judgment addressed oil and gas interests based upon the construction of four warranty deeds. Two original deeds were dated April 1977.  Two additional deeds, dealing with the same properties, were signed by the parties in January and February 1978.  Appellant contends the second set of deeds were "correction deeds" and related back to the 1977 deeds.  Appellees contend the newer 1978 deeds were not correction deeds, but rather materially changed the bargain and intent of the parties in at least five particulars.  At the heart of the dispute is whether a reservation of the mineral estate would have expired twenty-five years from April 1977, or twenty-five years from January and February of 1978.

A production company began a well on approximately April 17, 2001.  The well was completed on March 18, 2002.  Sometime later that year the well was producing in paying or commercial quantities.  On April 1, 2002, an 18 hour production test resulted in gas flows of 2000 mcf/day and oil flow of 831 bbl/day.  Large amounts were produced after April 1, 2002, during the rest of the year, and continued through the first months of 2003.

Based upon his construction of the deeds, appellant contends the twenty-five year reservation expired April 19, 2002, as opposed to appellees' contention that the expiration dates would have been in January and February 2003, absent the on-going production at that time or an agreed extension. In sum, appellant maintains there was no paying or commercial quantities from a producing well in April 2002, and based upon his construction of the deeds,  the mineral reservations expired.

Further background and procedural history are known to the parties and will not be reiterated herein.  TEX. R. APP. P. 47.1.

2

## II. Standard of Review

We review the trial court's granting of a motion for summary judgment *de novo*. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex. 1994); *Tex. Com. Bank Rio Grande Valley v. Correa,* 28 S.W.3d 723, 726 (Tex. App.–Corpus Christi 2000, pet. denied). Appellee was required to establish that no genuine issue of material fact existed and that judgment should be granted as a matter of law. TEX. R. CIV. P. 166©; *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex. 1985). Where the only question presented to the trial court was a question of law and both sides moved for summary judgment, the appellate court should render the judgment that the trial court should have rendered. *Coastal Liquids Transport, L.P. v. Harris Cty. Appraisal Dist.,* 46 S.W.3d 880, 883 (Tex. 2001); *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988); *Cigna Lloyds Ins. Co. v. Bradleys' Elec., Inc.*, 33 S.W.3d 102, 104 (Tex. App.–Corpus Christi 2000, pet. denied); *The Cadle Co. v. Butler*, 951 S.W.2d 901, 905 (Tex. App.–Corpus Christi 1997, no writ).

## III. Necessary Parties

Appellant raises three issues. We address his last issue first. In that issue, he claims the outcome of the case will affect mineral interests owned by six Hlavinkas and therefore all six are necessary parties. He argues that the issue was raised below and cites us to his First Amended Original Answer. For legal authority he cites section 37.006 of the Texas Civil Practice and Remedies Code. This section of the Declaratory Judgment Act provides: "(a) When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding." TEX. CIV. PRAC.

& REM. CODE § 37.006(a) (Vernon 1997)*; see also Sage St. Assocs. v. Fed. Ins. Co.*, 43 S.W.3d 100, 103-104 (Tex. App.–Houston [1st Dist.] 2001, pet denied).

However, the proper way to challenge a defect of parties is by verified plea. *Allison v. National Union Fire Ins. Co.*, 703 S.W.2d 637, 638 (Tex. 1986). Furthermore, as argued by appellees, the issue must be called to the attention of, or ruled upon by the court. It is axiomatic, as our sister court has held, that a nonjurisdictional plea must be urged before the trial on the merits and, if the plea is not timely called to the attention of and acted on by the court, it is waived. *See Long v. Tascosa Nat'l Bank*, 678 S.W.2d 699, 702 (Tex. App.–Amarillo, 1984, no writ). Appellant does not point to any ruling or refusal to rule by the trial court. *See* TEX. R. APP. P. 33.1. Our review of the record fails to reveal either a hearing on the matter or any ruling by the trial court. Therefore, this nonjurisdictional issue is waived. *Id.*; *Long*, 678 S.W.2d at 702.

## IV. The Relation-Back Doctrine

Appellees filed a declatory judgment to declare that the twenty-five year term mineral reservations in the two 1978 deeds had not expired. Following a hearing on appellees' motion for summary judgment, the trial court agreed. The thrust of appellant's appeal is that the trial court erred because the twenty-five year term reservation found in the 1978 deeds related back to the two 1977 deeds. Under the relation-back doctrine, the twenty-five year terms would have expired by April 2002. Appellant cites several cases for the proposition that the effective date of a conveyance described in a correction deed relates back to the date of the original deed.

In *Hill*, the court held that, as between the parties to the instrument, a ratification

takes effect from the time the proper acknowledgment was first made, and relates back to the effective date of the original instrument. *Hill v. Foster,*186 S.W.2d 343, 347 (Tex. 1945)(citing *Interstate Building & Loan Assn. v. Goforth*, 94 Texas 259, 59 S.W. 871, 873 (1900); *Halbert v. Hendrix*, 26 S.W. 911 (Tex. Civ. App.–Ft. Worth, 1894, writ ref'd.); *Gaither v. Gaither*, 14 S.W. 2d 286, 288 (Ct. Appeals, 1929), *aff'd as modified*, 25 S.W.2d 299,300 (Tex. 1930)). However, *Hill* also holds that, as to bona fide purchasers for value and without notice of the facts relating to the original certificate, the ratification does not relate back to the original instrument, but takes effect as of the date of the ratification. *Id.* It is important to note that in *Hill*, the subsequent deed simply corrected a deficient acknowledgment by a married woman. *Id.* at 346. No substantive changes were made to the deed. *See id.* We previously held that a correction deed generally relates back to the date of the agreement, which it purports to express more accurately. *Buccaneer's Cove, Inc. v. Mainland Bank*, 831 S.W.2d 582, 584 (Tex. App.–Corpus Christi 1992, no writ). At the same time, we also held that a correction deed takes precedence over, and is in substitution of, the document that it seeks to correct. *Id.* If there are two deeds that recite contrary evidence, there may a factual dispute. *See id.* In *Buccaneer's Cove*, we determined that contradictory recitals of the amount of consideration raised a material fact issue proscribing a summary judgment. *Id.* In *Polk v. Carey*, 247 S.W. 568, 570 (Tex. App.–Beaumont 1922, writ dis'm. w.o.j.), the court held that a second deed can be looked to in aid of the description given in a prior deed.

In support of his argument, appellant notes that each of the deeds recites:

This Deed is made in place of and as a Deed of Correction of a Deed executed by the Grantors herein...wherein by error or mistake the parties

5

> failed to recognize the existence of an outstanding royalty interest...intended to be reserved therein by the Grantors was incorrectly described and set forth, and this instrument is made by the Grantors and accepted by the Grantees in order to correct such errors and mistakes and in all other respect ratifies and confirms such former Deed.

Therefore, according to appellant's argument, the twenty-five year reservation began in 1977, commensurate with the signing of the first two deeds. The twenty-five year language specified "from the date hereof."

We note that the quoted language does not appear in the 1977 deeds. Both the twenty-five year term limitation and the language beginning "from the date hereof" first appear in the 1978 deeds. In contrast, the 1977 deeds contain a perpetual mineral reservation without time limitation. Appellees maintain the newly defined twenty-five year period begins with the execution and delivery of the 1978 deeds. Both deeds do acknowledge error or mistake in failing to recognize: (1) an outstanding royalty interest, and (2) incorrectly described mineral reservation. Appellant maintains the second deeds merely corrected scrivener's errors. Appellees counter the 1978 deeds made five material and substantive modifications to the parties agreements. Only one of the new 1978 deeds is labeled as a "correction" deed.

Appellees maintain that the parties clearly intended the new 1978 mineral reservation to apply prospectively because the 1978 deeds expressly states: "25 years from date hereof." Had the parties intended to begin the twenty-five year period from the prior 1977 deeds, they would have so stated.

Appellees argue that the new 1978 deeds accomplish five material and substantive modifications of the early agreements. First, the length of the mineral reservations are changed from "perpetual" to twenty-five years, or so long thereafter as oil, gas and other

6

minerals shall be produced and saved in paying or commercial quantities.

Second, the mineral reservations are defined to extend to property owned by the grantors and grantees as tenants in common.

Third, the mineral reservations were changed. The original deeds provided for an even allocation of interests. The new deeds provided that Oldrich J. Hlavinka and wife, Bessie Hlavinka reserved 51.85% as grantors. The grantees of their deed received 48.15%. In the January 1978 deed, William J. Hlavinka, et al., reserved 48.15% and deeded 51.85% of bonuses and /or rentals to Oldrich J. Hlavinka and wife, Bessie Hlavinka.

Fourth, a recorded 1/16 interest by M. D. Ball was recognized.

Fifth, and finally, the parties granted or were given an option by mutual consent for a twenty-five year extension.

When interpreting a deed, the intent of the parties is to be determined from the express language found within the four corners of the document. *Luckel v. White*, 819 S.W.2d 459, 461-63 (Tex. 1991). Construction of an unambiguous deed is a question of law to be resolved by the Court. *Id*. at 461. We are further instructed to harmonize all parts of the deed, "construing the instrument to give effect to all of its provisions." *Id*. at 462. In this case, the resolution of the competing arguments turns on the construction of the language of the original and correction deeds. The construction of an unambiguous contract is a question of law, which is reviewed *de novo*. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650-51 (Tex. 1999). It is a settled rule of law that, in the construction of written instruments, all instruments in a chain of title, when referred to in

7

a deed or any instrument conveying an interest in real property, will be read into it. *Dixon v. Amoco Prod. Co.*, 150 S.W.3d 191, 194 (Tex. App.–Tyler 2004, no pet.); *Harris v. Windsor*, 279 S.W.2d 648, 649 (Tex. App.–Texarkana 1955), *aff'd*, 156 Tex. 324, 294 S.W.2d 798 (Tex. 1956).

Our primary concern in construing a deed is to ascertain the true intent of the parties as expressed in the instrument. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). To determine whether a contract is ambiguous, we look at the agreement as a whole in light of the circumstances present when the parties entered into the contract. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). We examine and consider the entire writing in an effort to harmonize and to give effect to all the provisions of the contract so that none will be rendered meaningless. *Centerpoint Energy Houston Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 430 (Tex. App.–Houston [1st Dist.] 2005, pet denied). No single provision will control; rather, all provisions must be considered with reference to the whole instrument. *Id*.

Here, as appellees point out, there are substantial and multiple differences between the 1977 deeds and the 1978 deeds. At the same time, appellant is correct, in part, that some mere corrections by the latter deeds were made as to an outstanding royalty, e.g. the recorded 1/16 interest by M. D. Ball. Presumably, the "incorrectly described" grantor interests were more clearly defined to include property owned by the grantors and grantees as tenants in common. Even assuming the two matters noted earlier were scrivener's errors or mere corrections of "some facial imperfections," we are still left with other revisions found in the 1978 deeds, which we view as substantive.

8

The first substantive revision goes to the heart of appellant's argument. The 1977 deeds' mineral reservations were not limited to twenty-five years. The original reservations were without time limits or were "perpetual." Thus, the reservations were reconstructed to revert to the grantor after twenty-five years, absent production or mining and saving in paying or commercial quantities. The very essence of appellant's argument is thus founded on this first material change.

The second substantive revision provides for an optional twenty-five year extension of the reservations by mutual consent. Because the original reservation was perpetual, it contained no such option.

The third substantive revision changes the amounts of royalties reserved to the grantors and granted to the grantees. In the January 1978 deed, the grantors reserved 48.15% of any royalties yielded and the grantees received 51.85%. In the February 1978 deed, the grantors reserved 51.85% and the grantees received 48.15%. In contrast, both of the 1977 deeds provide for perpetual mineral reservation of 50% and an implicit grant of 50%.

Appellant claims the 1978 deeds merely reflected scrivener's errors. Indeed, it has been held that a correction deed is filed for the sole purpose of correcting some facial imperfection in the title. *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 871 (Tex. App.–Dallas 2005, no pet.) (citing *Joe T. Garcia's Enterprises, Inc. v. Snadon*, 751 S.W.2d 914, 916 (Tex. App.–Dallas 1988, writ denied); *see also Sanchez v. Telles*, 960 S.W.2d 762, 768 (Tex. App.–El Paso 1997, writ denied). A correction deed has a definite legal effect. *Id.* (citing *Borden v. Hall*, 255 S.W.2d 920, 925 (Tex. Civ. App.–Beaumont 1951, writ ref'd n.r.e.). Proof of the fact that a correction deed was filed and recorded

raises a prima facie presumption of the facts recited. *Id.* (citing *McAnally v. Texas Co.*, 124 Tex. 196, 76 S.W.2d 997, 1000 (1934)). However, the fact that a deed is nominated a "correction deed" does not alter the principle that the meaning of the instrument must be determined from review of the deed's four corners and application of the rules of construction. *Centerpoint Energy Houston Elec., L.L.P.* , 177 S.W.3d at 433. The 1978 deeds clearly expressed the intent of the parties that it was not filed solely to correct some facial imperfections in title or to correct scrivener's errors.

The 1978 deeds could have recited that they were retroactively effective to 1977. Instead, in one of the substantive changes in question, reserving minerals for twenty-five years, the later deeds unequivocally state such provisions were effective "from the date hereof." Like the situation in *Centerpoint Energy Houston Elec., L.L.P.,* the 1978 deeds, while stating in part a "correction" purpose, also clearly delineate an intent for other changes of a substantive nature. *See id.* Accordingly, we overruled appellant's second issue.

## V. Question of Fact

Appellant argues in the alternative, that a question of fact precluded the grant of a summary judgment. The argument states: "The summary judgment evidence, at best, shows that the well was tested and showed the potential for production on April 1, 2002, and that commercial production did not begin until August 2002." Elsewhere in his brief, appellant states: "The summary judgment evidence also establishes as a matter of law that production sufficient to extent the term mineral reservation did not begin until August

2002, after the April 29, 2002 expiration of the 25 year mineral reservations."[2]  Thus, appellant judicially admits production by at least August 2002.  Appellees likewise argue that it is undisputed that there was production before January 2003.  Because there was production before the expiration of twenty-five years under both the January and February 1978 deeds, there is no material factual dispute.  *Luckel*, 819 S.W.2d 461-63  (the intent of the parties is to be determined from the express language found within the four corners of the document); *see Buccaneer's Cove*, 831 S.W.2d at 584 (in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true).  We overrule this issue.

## VI.  Attorney's Fees

Appellees claim the trial court erred by not granting them attorney's fees in the uncontroverted amount of $13,875.00.   The Declaratory Judgments Act does not require an award of attorney fees to the prevailing party.  TEX. CIV. PRAC. & REM. CODE § 37.009; *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998).  Rather, the statute  provides that the court "may" award attorney fees. The statute  affords the trial court a measure of discretion in deciding whether to award attorney fees or not. *Id. (*citing  *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637-638 (Tex. 1996) *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 444-446 (Tex. 1994); *Edgewood Indep. Sch. Dist. v. Kirby*, 777 S.W.2d 391, 398-399 (Tex. 1989); *Duncan v. Pogue*, 759 S.W.2d 435, 435-436 (Tex. 1988); *Oake v. Collin County*, 692 S.W.2d 454, 455-456 (Tex. 1985)).  While it may be true that the amount of

---

[2] Appellant's brief at p. 12.

attorney's fees was not controverted, the trial court may nevertheless conclude that it is not equitable or just to award even reasonable and necessary fees. *Id.* at 21. Appellees wholly fail to cite to the record or material authorities that would mandate the trial court to award attorney's fees under the circumstances of this case. TEX. R. APP. P. 38.1(h); *Wolfe v. C.S.P.H., Inc*, 24 S.W.3d 641, 647 (Tex.App.–Dallas, 2000, no pet.). This issue is overruled.

VII.  Conclusion

The judgment of the trial court is affirmed.

DON WITTIG<br>Retired Justice

Memorandum Opinion delivered and filed
this the 22nd day of May, 2008.

12