Charles E. Anderson v. Charles Rogan, Commissioner.

No. 818. Decided December 18, 1899.

**Commissioner of General Land Office—Examination of Records—Mandamus.**

Under Revised Statutes, articles 4045, 4047, 4048, the Commissioner of the General Land Office is intrusted with a discretion as to permitting examination of the records of that office by others than employes, and can not be compelled by mandamus to permit such examination. (Pp. 186, 187.)

Original Application for writ of mandamus against the Commissioner of the General Land Office.

*D. W. Doom, Ashby S. James,* and *D. H. Doom,* for petitioner.—It is contended by the petitioner that the records set forth in his petition are public records of such a character that any citizen of this State has the lawful right to demand an inspection of the same, and that the Land Commissioner has no power arbitrarily to withhold from the public an examination of such public records kept in his office for the benefit of the public, and not as private papers of his, which he has the right to conceal from the scrutiny of any citizen. A public office is a public

trust, and should be administered for the benefit of the public generally, and no official should convert his department into a star chamber, where the transactions had with his department in connection with the matters administered by him are concealed from the public, and those who may wish to avail themselves of privileges conferred upon them by the law are kept in ignorance of their rights, by reason of their inability to inspect public records for the purpose of preparing themselves to take advantage of the privileges conferred upon the citizen of the State by its laws.

The Legislature of the State of Texas has seen fit to make the Commissioner of the General Land Office the agent of the State for the sale and lease of the lands belonging to the public free school fund, and the law in force at the time of the filing of this petition required all citizens who sought to acquire title to any portion of the land belonging to the public free school fund to file their applications to purchase same in the General Land Office where such applications were required to be kept, as the first link in the chain of title to such land.

The act of the Legislature in force at the date of the filing of this petition, and still in force in regard to the records of the General Land Office, is as follows: "Sec. 15. The Commissioner of the General Land Office shall retain in his custody as records of his office all applications, obligations, and all other papers relating to the sales of said lands, and shall cause to be kept accurate accounts with each purchaser." Acts of 1895, p. 68.  Also Rev. Stats., arts. 62, 4042, 4043.

It has been alleged by the petitioner that the Commissioner of the Land Office has in his department a register in which is kept a record of these applications to purchase school land as they are filed in his office; and the facts alleged show that this register is a record of the land department of this State.  Article 2436 of the Revised Statutes of this State is as follows: "It shall be the duty of the Secretary of State, Commissioner of the General Land Office, Comptroller, Treasurer, Commissioner of Agriculture, Insurance, Statistics, and History, Adjutant-General, and Attorney-General, to furnish any person who may apply for the same with a copy of any paper, document, or record in their respective offices, and also to give certificates attested by the seals of their respective offices, certifying to any fact or facts contained in the papers, documents, or records of their offices to any person applying for the same" (Revised Statutes, page 481); thus showing that it is contemplated by our laws that the records of the heads of the various departments are public records concerning which a citizen has a right to demand information.  The right, however, to a personal examination of such records is especially recognized by our law in article 2441 of the Revised Statutes, authorizing the Commissioner of the General Land Office to charge fees for such examinations as follows: "The Commissioner of the General Land Office is authorized and required to charge for the use of the State the following fees: When an examination of the records of the office is demanded by any person other than the

owner of the survey to be examined, his agent or attorney, such person shall be charged a fee of 25 cents." Again this right of examination of the public records is recognized by our statutes in article 2482 of the Revised Statutes, as follows: "No clerk of a court, justice of the peace, or other officer shall be allowed to charge any fee for the examination of any paper or record in his office." This article is apparently in conflict with the preceding one, authorizing the Commissioner of the General Land Office to charge a fee for such examinations, which question, however, is immaterial here, as the petitioner has tendered the fees which might possibly be collectible under the article authorizing the Land Commissioner to demand same. Also Rev. Stats., arts. 4045, 4046, 4047, 4053.

*T. S. Smith,* Attorney-General, and *R. H. Ward,* Assistant, for respondent.—At common law public records were not open to everyone generally; but only such persons as had some specific interest in the subject matter to which the record related had the right to inspect and examine the same. The common law being the rule of decision in this State, except when abrogated by statute, and there being no statute in this State in force, thus repealing the common law, and as relator fails to allege or show in himself any interest in the index or roll, or said applications, or any right or interest that could be affected by the same, then, even if the same was a public record, relator failed to show any lawful right in himself to inspect said index or roll, or said applications. Merrill on Mandamus, secs. 14 and 155; 14 Am. and Eng. Enc. of Law, p. 171; 20 Am. and Eng. Enc. of Law, p. 521; Randolph v. State, 60 Am. Rep., 762; Webber v. Townley, 43 Mich., 535; Match Co. v. Powers, 51 Mich., 146; Buck v. Collins, 51 Ga., 391; Bean v. People, 7 Colo., 200.

The answer of respondent shows that if relator and other persons similarly situated are permitted to have the custody of, and to inspect and examine, the index and roll, and said applications, such practice would most seriously interfere with the dispatch of business in the General Land Office in regard to the sale and lease of the school and other public lands; that employes of the office would be denied access to the same, when the continued and uninterrupted use of the same is absolutely essential to the efficient discharge of the duties of the office. That under such circumstances relator's private business or interest are subordinate to the general right of the public to have the business of the Land Office disposed of with promptness and dispatch. The right to examine even a public record does not exist when such examination interferes with public interests or public business. Randolph v. State, 82 Ala., 527; Brewer v. Watson, 61 Ala., 310; Webber v. Townley, 43 Mich., 535; People v. Richards, 99 N. Y., 620; State v. Rachac, 35 N. W. Rep., 7; Cormack v. Wolcott, 15 Pac. Rep., 245; Bean v. People, 2 Pac. Rep., 909; Buck v. Collins, 51 Ga., 395; Scribner v. Chase, 27 Ill. App., 36.

There can be no doubt that under the common law a private person

has no right to examine or inspect public records unless he is interested in or affected in some manner by such public record. That the common law, unless abrogated by statute, is the rule of decision in this State. Conceding, then, for the sake of the argument, that the index or roll and said applications under consideration are public records, the question arises is there any statute altering the common law. The only statutes in force in this State on this subject are articles 2441, 4043, 4045, 4046, 4047, 4048, Revised Statutes 1895. Each and all of said articles, except article 4043, are literally taken from an act of the Legislature approved June 2, 1873, entitled "An act to better protect the papers, records, and files in the General Land Office." See Acts 1873, p. 180.

By this statute, it will be observed that the private citizen, instead of being given the unrestricted right to inspect or examine the records or files of the General Land Office, it was made a criminal offense for such citizen to inspect or examine the records "without first obtaining the consent of the Commissioner, and an order for the detail of a clerk of said office to be present and superintend such examination." And it is also an offense to make such examination "without the presence or superintendence of such clerk detailed for that purpose."

When the fact is considered that the examination can only take place in the presence of a clerk detailed for that purpose, the Legislature meant, by making it necessary to obtain "the consent of the Commissioner, and an order for the detail of a clerk to be present and superintend such examination," that the Commissioner of the Land Office should be vested with discretion as to whether or not such examination should be made. If it was not intended by the law to give the Commissioner a discretion in this regard, the law would have given the citizen the unrestricted right to make the examination, and have expressly made it the duty of the Commissioner to give his consent, and to detail the clerk, etc.

BROWN, Associate Justice.—This action was brought by the plaintiff against Charles Rogan, Commissioner of the General Land Office, by petition filed in this court, in which the facts alleged are substantially these: There were deposited and filed in the General Land Office certain papers, application rolls, and indexes; concerning the public free school lands belonging to the State of Texas lying in Wheeler County. The plaintiff Anderson was employed by one N. White to inquire into and ascertain if certain sections of the public free school land in the said county were open for application to purchase, and to secure permission from the Commissioner to examine the roll or index and applications for purchase of such land in the said county. That plaintiff applied to the defendant, the Commissioner of the General Land Office, for permission to make such examination, but he refused to permit plaintiff, on behalf of the said White, to examine the said applications, roll, or index. The petition contained many other allegations not necessary to be enumerated; it was full in stating all the facts. Plain-

tiff prayed that an alternative writ of mandamus issue to the defendant, and that, upon final hearing, a peremptory writ be issued, commanding the said Rogan, Commissioner of the General Land Office, to permit him to make the examination under the rules prescribed by law.   Defendant Rogan filed an answer containing a general demurrer, special exceptions, and a special answer setting up facts showing why he had refused to give his consent for the plaintiff to make such examination. It is, however, unnecessary for us to notice any of the pleadings of the defendants, except the general demurrer.

Article 4045 of the Revised Civil Statutes reads as follows:   "Anyone desirous to examine any of the papers, records, or files in the General Land Office shall first obtain the consent of the Commissioner or the chief clerk, in writing, so to do, and an order for the detail of a clerk of said office to be present and superintend such examination."   Articles 4047 and 4048 require that the clerk detailed to superintend the examination shall, before he permits such person to handle the papers or files, indorse on the wrapper or cover a list of the papers contained in the wrapper, with the corresponding numbers thereof, and, after the examination has been completed, the clerk shall examine the papers of the file and see that they correspond with the list on the wrapper and are in place.

If the statute quoted invests the Commissioner of the General Land Office with a discretion in the matter and empowers him to determine whether or not the examination may be made, then the mandamus can not be issued.   De Poyster v. Baker, Com., 89 Texas, 155.   This proposition needs neither argument nor more authority to sustain it, because it lies at the foundation of the law governing the writ of mandamus.

The requirement that the applicant shall first procure the consent of the Commissioner necesarily implies that he has not the right to make the examination without that consent; and also, that the Commissioner, having the power to consent, must necessarily be invested with authority to refuse consent.   This would seem to be plain enough from the language of the statute itself and to result necessarily from the very words used; but the provisions prescribing the manner of examination, when consent has been procured, emphasize the fact that the Legislature intended to commit to the Commissioner of the General Land Office the care and custody of the records of the State concerning its public lands, as well as the lands belonging to private individuals, with a very broad, if not an absolute, discretion over the subject of examination made by persons not employed in the office.   Without exception, no citizen of Texas has the right to make any examination of the records of the General Land Office except under the supervision, and, we might say, surveillance of a clerk detailed especially for the purpose of overlooking such examination.   It must be in the presence of the clerk, and not only that, but the clerk must, before he commits to the examiner any of the papers, write a list of them upon the cover, with their corresponding numbers, so as to thoroughly identify each one, and, when the examina-

tion has been completed, no matter by whom made, the clerk is enjoined to make a careful examination of the papers, comparing them with the indorsement upon the cover to ascertain that all have been returned safely. These extraordinary measures indicate clearly that there was a strong reason for the enactment of these provisions of the law, which, in the opinion of the Legislature, made it necessary that a strict guard and watch should be placed over the records of the General Land Office.

Prior to the year 1873, great liberty was allowed in the examination of the records of the General Land Office, and many valuable papers were missing from the files which should have been there. About that time, many forged titles to land were placed of record in this State, in aid of which information might have been obtained from that office, and, under these circumstances, the Legislature which assembled in that year enacted a law entitled "An act to better protect the papers, records, and files in the General Land Office," approved June 2, 1873, which embraced the provisions before quoted, and in addition made it a penal offense to handle or examine any of the records of that office without the consent of the Commissioner, which is embraced in article 117, Penal Code. The surrounding circumstances and the caption of the bill show that the act was passed to meet an imperative demand for protection to the records of that office, and nothing short of the rigid regulations prescribed would have answered the purpose.

We can see no reasonable ground to doubt that the Commissioner of the Land Office has the right to refuse permission to anyone to examine any papers in the General Land Office, and that such person must resort to the regular methods of getting certified copies or certificates of fact as provided by the law. In all ordinary cases, this character of information would be sufficient.

We would not say that there might not arise cases in which the Commissioner of the General Land Office would be required to permit an examination of the records; but the petition in this case presents no such state of facts. If the records of Wheeler County did not show the land to be upon the market, it could not be the subject of application to purchase; if shown by such records to be upon the market for sale, any citizen who possessed the prescribed qualifications could make application therefor. But it is unnecessary to add reasons for the decision at which we have arrived. It is sufficient for us that the statute commits this matter to the discretion of the Commissioner of the General Land Office, and this court has no power to compel him to give that consent. The application for writ of mandamus is therefore refused.

*Writ of mandamus refused.*