### HERALDS OF LIBERTY v. FERN.
#### (No. 959–4777.)

Commission of Appeals of Texas, Section A. June 25, 1927.

Death ⊜⇒4—Evidence as to insured's absence held to support finding that he was dead (Rev. St. 1925, art. 5541).

In suit on beneficiary certificates, finding that insured was dead *held*, under Rev. St. 1925, art. 5541, supported by evidence relative to absence of over 10 years.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by De Witt Fern against the Heralds of Liberty. Judgment for plaintiff was affirmed by the Court of Civil Appeals (289 S. W. 87), and defendant brings error. Affirmed.

Geo. J. Edwards, Jr., of Philadelphia, Pa., and Joe L. Hill and Briscoe & Morris, all of San Antonio, for plaintiff in error.

Jas. A. Waltom and Earl D. Scott, both of Jourdanton, for defendant in error.

HARVEY, P. J. This is a suit for $1,000 brought by defendant in error, De Witt Fern, on September 1, 1925, against the plaintiff in error, Heralds of Liberty, a beneficiary society, on two beneficiary certificates issued by the plaintiff in error on the life of Edward B. Fern; the defendant in error being named as beneficiary in each of the certificates. The cause was tried by the court without a jury, and judgment was rendered for the defendant in error for amount called for by the certificates. The Court of Civil Appeals affirmed this judgment. 289 S. W. 87.

The application upon which said beneficiary certificates were issued to Edward B. Fern was made by him in due form to the plaintiff in error on January 25, 1912. In such application it is stated that he is married. The said beneficial certificates were duly issued on February 26, 1912. The premiums on said certificates were payable monthly, and all such monthly premiums were paid to the plaintiff in error as they accrued up to June, 1925. In the last named month demand was made on plaintiff in error by De Witt Fern for payment of said certificates, such demand being accompanied by proof of death of Edward B. Fern, in the form of affidavits showing his disappearance as hereinafter shown. Payment was refused by the plaintiff in error.

At the time the certificates were issued, Edward B. Fern resided at Amphion, in Atascosa county, and was county commissioner from the precinct in which he resided. He had been county commissioner since December, 1910, and his term of office would have expired in December, 1912. On May 14, 1912, he tendered his resignation as county commissioner, which resignation was duly accepted on that date. On June 24, 1912, he wrote the plaintiff in error the following letter, to wit:

"Amphion, Texas, June 24, 1912.

"Heralds of Liberty, Philadelphia, Pa. Dear Sirs: Inasmuch as I am holding certificate No. 36604–06 made in favor of my crippled brother, De Witt Fern, as I am going off to be absent indefinitely, I hereby my elder brother Bayard Fern, my legal agent to keep my dues paid up and transact such other business as may be necessary for me and in my name.

"Yours fraternally,    Edward B. Fern."

Immediately after writing this letter, he left Atascosa county and has never returned.

The contention is made by the plaintiff in error to the effect that there is no evidence in the record raising the issue of Edward B. Fern's death. In addition to what has already been stated, there is evidence to show the following facts:

The father and mother of Edward B. Fern married in Atascosa county in the year 1859, and continued to reside at Amphion in said county until they died. During that time their sons, Bayard Fern, Edward B. Fern, and De Witt Fern were born to them. De Witt Fern is a paralytic. He has not the use of his lower limbs. He has to crawl in order to get about. He has an impediment in his speech and speaks with difficulty. He is wholly incapable of manual labor or of making a living, and cannot read or write. He has been in this condition ever since his birth some forty-odd years ago, and at the present time is being supported by the county.

The three brothers continued to reside with their parents at Amphion until the latter died many years ago. After the death of their parents the three brothers continued to reside together in the same house at Amphion

until Edward left the county in June, 1912; during which time, Edward and Bayard supported and took care of De Witt. Nobody else lived with them. After Edward left, De Witt and Bayard continued to reside there until Bayard died in May, 1925. The mutual affection which naturally exists between brothers existed between Edward and his brother Bayard; and Edward had great devotion for his crippled brother De Witt, who was dependent upon him and Bayard for care and support. Edward never had a wife, and never lived with a woman as his wife, so far as known to any of the residents of Atascosa county who testified on the trial. A number of residents of said county, who had known all three boys for many years and were acquainted with their home and their surroundings, testified as witnesses on the trial; none had ever heard Edward say that he was married. The Fern boys, and their father before them, were highly esteemed in the community in which they lived. Prior to June, 1912, Edward had been away from Atascosa county but a few times in his life. The longest period that he was away was when he was serving as a soldier in the United States Army during the Spanish-American War. At that time he was away from home about a year. He was a farm laborer, and the other intervals of absence from the county were occasioned by his going elsewhere to procure work temporarily. These periods of absence were of short duration. Each time he was away from home (while in the army and during the other periods of absence) he wrote letters to Bayard or De Witt, or both, and they always knew of his whereabouts. Just before Edward left in June, 1912, he told De Witt that he was going to San Antonio. During the first year after he left, he wrote two letters to De Witt. These letters came from somewhere in Oklahoma, and were read to De Witt by his brother Bayard, now dead. De Witt testified that he could not recall the contents of these letters. The last of these letters came about a year after Edward had left home, and this is the last intelligence of him that De Witt has received. De Witt and Bayard frequently talked with each other about their absent brother, and there is evidence to justify the conclusion that Bayard heard nothing of Edward, and knew nothing of him or his whereabouts, after the first year of the latter's absence from the county. There is no evidence that Edward ever had a home elsewhere than at Amphion in Atascosa county. There is some evidence to the effect that about the time Edward resigned

as county commissioner there was some "talk" going the rounds in Atascosa county, which witnesses describe as "political talk," about Edward, as commissioner, letting contracts for county work in his precinct at prices in excess of what they ought to have been. But no official complaint ever was lodged against Edward, and he was never indicted for malfeasance in office or any other offense. The man who was county attorney at the time Edward resigned as county commissioner testified that an investigation of Edward Fern's administration of the office of commissioner was made and it was "found that he had been letting some contracts out here for building roads and repairing crossings and things, on some of those streets, that the commissioners' court thought was very much out of proportion to the work done. They came to the conclusion they were paying vastly more than the work was worth." This witness further said:

"As to the outcome of the investigation, there wasn't anything of it, except there was an investigation, that I know of."

It is also in evidence that on May 14, 1918, Bayard Fern wrote a letter to the plaintiff in error in which he inquired if his brother Edward could take out any additional insurance on the "examination" that was made when the certificates in suit here were issued.

Aside from such inferences and presumptions as may be indulged from facts in evidence, as we have in substance stated such facts, there is no evidence tending to show that Edward was alive at any time after he wrote the last letter to De Witt as has been stated.

We think there is evidence to support the finding by the trial court that Edward B. Fern is dead. R. S. 1925, art. 5541; French v. McGinnis, 69 Tex. 19, 9 S. W. 323; W. O. W. v. Ruedrich (Tex. Civ. App.) 158 S. W. 170; W. O. W. v. Piper (Tex. Civ. App.) 222 S. W. 649; Primm v. Stewart, 7 Tex. 178; Thetford v. Modern Woodmen of America (Tex. Civ. App.) 273 S. W. 670.

We have duly considered all other matters of which the plaintiff in error complains and find no error. There is no pleading raising the issue of limitation discussed in the brief of plaintiff in error.

We recommend that the judgment of the trial court, and that of the Court of Civil Appeals affirming same, be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both affirmed, as recommended by the Commission of Appeals.