**JOHNS et al. v. HILBURN et al.**

**No. 4350.**

Court of Civil Appeals of Texas. Texarkana.
Oct. 11, 1933.

Rehearing Denied Oct. 26, 1933.

Baker, Botts, Andrews & Wharton, S. H. German and Y. D. Mathes, all of Houston, for appellants Maceo Johns, E. G. Thompson, and Y. D. Mathes.

Vinson, Elkins, Sweeton & Weems and George E. B. Peddy, all of Houston, and Margaret Clarke, of Dallas, for appellants Viola Wells, Sidney Wells, and Byrd-Frost, Inc.

E. G. Wilson, John V. Beveridge, and Yancey, Spillers & Brown, all of Tulsa, Okl., Ashworth, Crisp & Ashworth, of Kaufman, Jack E. Price and Bramlette & Meredith, all of Longview, Wm. Hodges, of Texarkana, McDonald & Floyd and Mike E. Smith, all of Fort Worth, Wynne & Wynne, Syd Reagan, Riley Strickland, and H. A. Leaverton, all of Longview, Carl E. Wade, of Laredo, Chauncey & Chauncey, of Longview, J. C. Farmer, of Tulsa, Okl., George B. Stone, of Houston, House, Wilson & House, of Dallas, J. F. Park, of Kilgore, and I. C. Underwood, of Marshall, for appellees.

JOHNSON, Chief Justice.

Appellants, Maceo Johns and his sister, Viola Wells, joined by her husband, Sidney Wells, and parties claiming interests under them, as plaintiffs, filed this suit in trespass to try title in the district court of Gregg county, September 5, 1931, against the heirs of Susie Hilburn, deceased, and parties claiming interests under them, as defendants. Plaintiffs seek to recover an undivided one-half interest in two tracts of land in Gregg county, containing 81 and 200 acres, respectively. John Hilburn owned the land at the time of his death, intestate, December 18, 1918. He was survived by his second wife, Susie Hilburn, and five grandchildren by his first marriage, to wit: Maceo Johns and Viola Wells, children of one of John Hilburn's two daughters, and Christine Jenkins, Jewel Jenkins, and Felix Jenkins, children of John Hilburn's other daughter, constituting his sole heirs. Susie Hilburn had no children. After his death the lands belonging to the estate of John Hilburn were partitioned, in the district court of Gregg county, between

his said five grandchildren and surviving wife, Susie Hilburn. The 281 acres were awarded, undivided, one-half to Maceo Johns and Viola Wells and one-half to the Jenkins children, subject to the life estate and homestead interest adjudged to Susie Hilburn. The one-half interest awarded to the Jenkins children is not involved in this suit. The one-half awarded to Maceo Johns and Viola Wells, being a one-fourth undivided interest each, is the subject-matter of this suit. Susie Hilburn died, intestate, July, 1929. Appellees claim by inheritance from and under Susie Hilburn, and that she acquired title to the interests here involved by deeds of conveyances from Maceo Johns and Viola Wells, dated October 18, 1920, and January 4, 1921, respectively. Appellants allege that these deeds together with certain contemporaneous written agreements entered into by the parties at the time of the execution of the respective deeds constituted mortgages, whereby no title passed, and that a lien only upon the land was created, payment of which they tender and offer to discharge. In response to which appellees contend that the contemporaneous written agreements were in effect no more than option contracts, and did not affect the title conveyed further than to burden it with the right of the vendors to have it reconveyed upon compliance with the terms therein specified, thereby constituting conditional conveyances.

The instruments relating to the transaction between Maceo Johns and Susie Hilburn are:

(1) A written agreement signed and acknowledged by Maceo Johns and Susie Hilburn, dated October 18, 1920, in terms as follows:

"The State of Texas, County of Gregg.

"Agreement this day made by and between Maceo Johns of Gregg County, and Susie Hilburn of Gregg County, witnesseth:

"Whereas, Maceo Johns owns a one-fourth undivided interest in 281 acres of land as the same is described in Minute Book K, page 304 of the Minutes of the District Court of Gregg County, Texas, in case of Susie Hilburn et al. v. T. J. Jenkins et al., and said interest being subject to the life estate of Susie Hilburn, and the said Maceo Johns being desirous of securing a loan upon said property and of having Susie Hilburn to become a surety for him, it is agreed that Maceo Johns and his wife shall deed to Susie Hilburn his interest in the said aforementioned tracts of land for a recited consideration of Eight Hundred Dollars, and that Susie Hilburn will give him two notes in the sum of Four Hundred Dollars each, payable in one and two years, to enable him to procure money thereon. It is therefore agreed that upon the payment of said notes at maturity Susie Hilburn will redeed the land to Maceo Johns and that the transaction is in reality as between Maceo Johns and Susie Hilburn nothing but a mortgage and upon the payment of said notes, in the event that Susie Hilburn has to pay them, Susie Hilburn agrees to redeed the land to Maceo Johns, or to any person whom he may cause to be deeded to, upon his paying said notes.

"Witness our hands in duplicate this the 18th day of October, 1920.

"Maceo Johns
"Susie Hilburn."

Acknowledgments were taken on same date before R. F. Osborn, notary public, Gregg county. It was filed for record September 26, 1930, and recorded October 15, 1930, in the deed records of Gregg county.

(2) A general warranty deed in regular form signed and acknowledged by Maceo Johns and his wife October 18, 1920, purporting to convey the interest of Maceo Johns in the land to Susie Hilburn, in consideration of two $400 vendor's lien notes, payable to the order of Maceo Johns in one and two years; bearing 10 per cent. interest, and providing for the usual 10 per cent. attorney's fees, and reserving the vendor's liens, stipulating that upon payment of the notes the deed shall become absolute.

(3) The two vendor's lien notes, signed by Susie Hilburn, as described in the deed.

(4) Assignment by indorsement and written transfer by Maceo Johns of the notes, vendor's lien, and superior title, dated October 19, 1920, to the Guaranty State Bank of Kilgore, Tex.

The transaction between Viola Wells and Susie Hilburn is evidenced by: (1) A general warranty deed in regular form, dated January 4, 1921, executed by Viola Wells and husband, Sidney Wells, conveying Viola Wells' one-fourth interest in the land to Susie Hilburn for a consideration of two $450 vendor's lien notes, payable to the order of Viola Wells, due November 19, 1921–1922, bearing 10 per cent. interest, attorney's fees, reserving the vendor's lien, and providing that upon the payment of the notes the deed shall become absolute; and the deed contained the following special provision: "It is further agreed, as a part of the consideration for this conveyance, that in the event the said Susie Hilburn fails and refuses to pay the notes above mentioned, she will and does hereby waive her right to claim a life estate in said land, or a homestead interest in said land, in and so far as the collection of the above described notes is concerned." (2) The vendor's lien notes above described, signed by Susie Hilburn, and assigned by indorsement by Viola Wells and husband, Sidney Wells, to the Guaranty State Bank of Kilgore, Tex. (3) Written agreement signed and

acknowledged by Susie Hilburn, same date of deed and notes, and in terms as follows:

"The State of Texas, County of Gregg.

"Whereas, Viola Wells and husband, Sidney Wells, having conveyed to me a certain tract of land as described in a deed of even date herewith, in consideration of two of my notes in the sum of Four Hundred and Fifty Dollars each and due and payable on November 19th, 1921, and November 19th, 1922, and whereas, as a further consideration for said deed I have agreed to reconvey or resell this land to Viola Wells upon the payment of Nine Hundred Dollars to me, together with such interest as there may be due thereon, dating from this date, at the rate of ten per cent. per annum. This right to resell to them shall enure to their heirs and assigns.

"Witness my hand this, the 4th day of January, A. D. 1921.

"Susie Hilburn."

Acknowledgment of Susie Hilburn to this instrument was taken before R. F. Osborn, notary public, Gregg county, January 5, 1921, and filed for record January 13, 1921, and recorded in the deed records of Gregg county.

Shortly after the transactions it appears that Maceo Johns moved to Houston, Tex., and that Viola Wells moved to Marshall, Tex., at which places they have since continued to reside. All the notes were paid by Susie Hilburn to the Guaranty State Bank of Kilgore, Tex., at or about maturity; she was never reimbursed; she continued to reside on the land to the date of her death, and paid all taxes thereon as they became due; since her death the land has been in possession of Susie Hilburn's heirs. It further appears from the evidence that the value of the interest purported to be conveyed by each transaction is approximately the amount of the notes. It does not appear in evidence that Susie Hilburn after paying the notes ever made any demand on Maceo Johns or Viola Wells to be reimbursed, or that they ever offered to pay or make demand for the land; however, the absence of any testimony upon the part of the interested parties in this respect may be accounted for by reason of the death of Susie Hilburn. The witness Bob Walls, not a party to the suit, testified for the defendants that Susie Hilburn claimed the land, and that Maceo Johns and Viola Wells knew as early as 1921 that Susie was claiming the land, and that "I was with Maceo Johns when he sold it to her, and he told me —he told me she knowed it was hers"; that the witness had a conversation with Maceo Johns in 1921, in which Maceo Johns stated "he didn't want it was the reason he sold it." Witness never heard Viola Wells say anything about the transaction.

The case was tried to a jury. The court, after overruling plaintiffs' motion for an instructed verdict, submitted to the jury four issues as follows (defining terms "preponderance of the evidence," "mortgage," and "conditional sale"):

1. "Do you find from a preponderance of the evidence that Maceo Johns and Eva May Johns and Susie Hilburn intended at the time of the execution and delivery of the written instruments dated October 18, 1920, that said instruments should constitute a mortgage?" Jury answer: "No."

2. "Do you find from a preponderance of the evidence that Maceo Johns and Eva Johns and Susie Hilburn intended at the time of the execution and delivery of the written instruments dated October 18, 1920, that said instruments should constitute a conditional sale?" Jury answer: "Yes."

Issues 3 and 4 were the same as 1 and 2, except that they relate to the transaction between Viola Wells and Susie Hilburn, and like answers were made by the jury as to 1 and 2, respectively. Upon the verdict of the jury, the court entered judgment against the plaintiffs and for the defendants; and from an order of the court overruling their motion for a new trial, the plaintiffs have perfected their appeal. Under their assignments of error complaining of the action of the court in overruling their motion for an instructed verdict, the appellants respectfully contend, in substance, that the written instruments relating to the transaction between Maceo Johns and Susie Hilburn and the written instruments relating to the transaction between Viola Wells and Susie Hilburn are unambiguous and upon their face clearly evidence an intention of the parties that the instruments in form deeds should constitute mortgages, securing the payment of debt, contended by appellants, to have been created by Maceo Johns and Viola Wells in favor of the Guaranty State Bank of Kilgore, with Susie Hilburn as surety; and that the instruments should have been so construed and given effect by the trial court, and (2) appellants say that if they are in error as to their first contention, to the effect that the instruments upon their face clearly and conclusively evidence a mortgage, then they assert that the transaction evidenced by the instruments in each case was manifestly not an unconditional sale; that it was obviously either a mortgage or a conditional sale; and that it cannot be a conditional sale, because the essential element of an agreement to reconvey at a specified time is absent; therefore the court should have determined it a mortgage, without the aid of parol evidence and the finding of the jury as to the intentions of the parties in executing same. In response, appellees assert that the instruments do not upon their face evidence or reveal any debt or obligation, existing or thereby created, on the part of Maceo Johns or Viola Wells to the Guar-

anty State Bank of Kilgore, Susie Hilburn, or any other party; that wanting in this essential element, the instruments upon their face did not constitute the transaction in either case a mortgage; and that by reason thereof the real intention of the parties became an issue of fact for the jury, and upon which parol testimony was admissible.

An absolute deed in form may be proven to be a mortgage by contemporaneous agreement of the parties, either written or parol, showing their intention to thereby secure the payment of debt or the performance of an obligation. The character of the instrument is to be determined by the intent with which the grantors executed and the grantee received it; equity does not regard the *form*. And the rules under which such intent may be ascertained are very aptly stated by Judge Denman in Eckford v. Berry, 87 Tex. 415, 28 S. W. 937, 938, as follows:

"When the form of the instrument, on its face, evidences an absolute conveyance or a conditional sale, or when, from the face of the instrument, it does not clearly appear that the real purpose of its execution was to secure the payment of a debt, in such cases parol evidence is admissible to show the real purpose of the transaction. If, upon the whole case, it appears that the real purpose of the transaction was to secure the payment of a debt, the instrument will be held to be a mortgage, no matter what may be its form. * * *

"But when, from the face of the instrument, it clearly appeared that the purpose of the transaction was to secure the payment of a debt, the court of equity would hold it to be a mere security, without any parol evidence, and would enforce the equity of redemption by allowing the debtor a reasonable time in which to pay. In such cases [cases in which the instrument clearly appears on its face to be security for debt] neither the debtor nor the creditor have ever been permitted to introduce parol evidence to show the instrument to be other than what it purports to be on its face."

To the same effect: Hubby v. Harris, 68 Tex. 91, 3 S. W. 558; Ruffier v. Womack, 30 Tex. 332; Alstin v. Cundiff, 52 Tex. 453; Walker v. McDonald, 49 Tex. 458; Alexander v. Conley (Tex. Civ. App.) 187 S. W. 254.

When the conditions of defeasance appear in a separate instrument, evidencing a part of the same transaction as in this case, the effect is the same as if embodied in the deed itself.

With the above principles in mind, we will examine the instrument, copied above, relating to the transaction between Maceo Johns and Susie Hilburn. We find at the outset of the instrument the declaration of the parties that Johns is the owner of a one-fourth undivided interest, subject to the life estate of Susie Hilburn, in the land same as conveyed in the deed. It then states what Johns desires, how it is proposed to accomplish such desires, and the mutual consent of the parties to the proposed plan. He desires: (1) To secure a loan upon the land (not to sell it), and (2) to have Susie Hilburn to become a surety for him (not to purchase the land). The real purpose of the parties being stated, then follows the mutual consent of the parties and the plan agreed upon to enable Johns to procure the loan upon the land, and for the payment of which, in addition thereto, Susie Hilburn is to become his surety. Having clearly evidenced the real intention of the parties to be the procuring of a loan by Maceo Johns, for the payment of which the land is to become security and Susie Hilburn is to become surety, the nature of the plan or the *form* of the instruments evidencing the transaction is immaterial, though in the form of an absolute deed of conveyance, equity will declare it a mortgage. And when we keep in mind the agreed status of Susie Hilburn to be that of a surety for Johns and that "as between them the transaction is in reality to be nothing but a mortgage," Laird v. Weiss Bros., 85 Tex. 93, 23 S. W. 864, then the plan as carried out does not appear to be ambiguous, nor so repugnant to the expressed purpose of the parties as to render uncertain their real intentions as evidenced by the terms of the contemporaneous agreement. The fact that the instruments as a whole served the dual purpose of securing the bank from which the money was finally thereby procured, and of securing Susie Hilburn against her liability as surety, did not destroy the effect of defeasance upon the deed. And the fact that Johns appeared in the relation of indorser and Susie in the relation of principal payor to the bank would not prevent proof of their true relations as between themselves. Burke v. Cruger, 8 Tex. 67, 58 Am. Dec. 102. In 21 R. C. L. p. 947, § 3, we find the rule stated: "It is immaterial, however, in what form the relation of principal and surety is established, or whether the creditor is or is not contracted with in the two capacities, as is often the case when notes are given or bonds are taken. The relation is fixed by the arrangement and equities between the debtors or obligors, and may be known to the creditor, or wholly unknown." When Susie Hilburn paid the notes, the obligation of Maceo Johns as principal, to her as his surety under their agreement, thereby matured and became actionable. Fox v. Kroeger, 119 Tex. 511, 35 S.W.(2d) 679, 681, 77 A. L. R. 663, from which we quote: "From what we have said it follows that we now announce the rule in Texas to be that, where the surety pays the debt of the principal, he has his election to either pursue his legal remedies and bring an action on an assumpsit, or the obligation im-

plied by law in his favor for reimbursement by the principal; or he can prosecute an action on the very debt itself, and in either event he stands in the shoes of the original creditor as to any securities and rights of priority. What we have already said applies with equal force to all debts whether represented by a negotiable instrument or not." It appears to us, as above indicated, that the written agreement executed by Maceo Johns and Susie Hilburn evidences an inseparable part of the transaction by which the deed was executed; that it clearly evidences on its face the intention of the parties that the deed should constitute a mortgage securing the payment of the money so procured and for which Susie Hilburn became his surety; thus on its face clearly evidencing a mortgage, parol evidence not being admissible to the contrary; and the trial judge should have so construed the instruments and instructed the jury to return a verdict for Maceo Johns and those claiming under him, the question of innocent purchasers not being raised in the case.

█ The instrument, copied above, executed by Susie Hilburn as a part of the consideration of the conveyance to her by Viola Wells and husband, Sidney Wells, of Viola's one-fourth revisionary interest in the land, does not on its face clearly evidence that the deed was executed as security for any debt or obligation of Viola Wells. In fact, it does not in the least indicate on its face that the transaction is for the purpose of Viola Wells to procure money thereon, further than in payment of the notes by Susie Hilburn, or that Susie Hilburn is in any way to become her surety. The intention of the parties to constitute the transaction a mortgage, as well as the essential element of debt or obligation to be secured thereby, does not appear upon the face of the instrument. But, appellants contend that the instrument is as well wanting in the element of "a specified time within which the vendor may repurchase" to constitute it a conditional sale, as it is in the element of debt or obligation to constitute it a mortgage, and so, being rendered on its face doubtful as to whether it was the intention of the parties to constitute a mortgage or a conditional sale, that the court should have rendered the doubt in favor of a mortgage without further investigation or the aid of parol evidence, citing the language of Judge Tarlton in the case of Gray v. Shelby, 83 Tex. 405, 18 S. W. 809, 810, as follows: "As between a mortgage and a conditional sale, equity will construe the instrument, necessarily the one or the other, as a mortgage, unless violence be thereby done to the intention of the parties." Hume v. Le Compte (Tex. Civ. App.) 142 S. W. 934. We do not understand Gray v. Shelby, or any of the authorities cited by appellants, to hold, nor the language above quoted to mean, that where the instrument is ambiguous in its terms, wanting in one or more of the essential elements necessary to constitute either a mortgage or conditional sale, rendering the real intention of the parties uncertain and doubtful, that the court must without the aid of further evidence, parol or otherwise, resolve the doubt as to the intention of the parties in favor of constituting the instrument a mortgage. We do not understand the rule to go further than, if the terms of the instrument render doubtful whether or not the parties intended to constitute a mortgage or conditional sale, and if upon the whole case including the aid of parol evidence, there still remained the doubt, equity would resolve it in favor of a mortgage. The case of Walker v. McDonald, 49 Tex. 458, is cited by Judge Tarlton following his language above quoted. The holding in Walker v. McDonald is: (1) Parol testimony was admissible to show the real intent of the parties to the defeasance; (2) it was error for the court to exclude testimony offered to explain the defeasance; (3) it was error for the court to hold that the defeasance needed no explanation, and was evidence of a trust or mortgage; (4) the instrument susceptible of explanation to be either a mortgage or conditional. Judge Tarlton makes himself clear, if need therefor, in the sentence, following the one above quoted: "And, in order to ascertain the proper construction of the instrument, equity will look to the acts and declarations of the parties, and the circumstances attending the transaction, and to those preceding it and subsequent to it." The trial court did not err in permitting the facts to be determined by the jury as to the intention of the parties to the transaction between Viola Wells and husband, Sidney Wells, and Susie Hilburn and in entering judgment thereon against Viola Wells and those claiming under her.

The judgment of the trial court as to Viola Wells and those claiming under her, termed the "Viola Wells interest," is affirmed; and the judgment of the trial court as to Maceo Johns and those claiming under him is reversed and judgment here rendered in favor of appellants Maceo Johns and those claiming under him, for the one-fourth undivided interest, termed the "Maceo Johns interest," in the 281 acres of land described in the judgment of the trial court. It further appears in the record, and presented by proper assignments, that certain of the appellants acquired, by purchase and conveyances of record, from appellees fractional undivided interests in the land and minerals, before and during the trial. The judgment of the trial court in favor of appellees and against appellants, in so far as it affects, or divests appellants of, the title to the interests so acquired and held by appellants, is reversed and here rendered in favor of appellants and against appellees.

Appellants have made other assignments of error, all of which we have carefully considered and respectfully overrule.

The cost of this appeal and of the trial court is taxed, one-half against Viola Wells and those claiming under her, and one-half against appellees.