**BORDEN v. HALL et al.**

No. 4716.

Court of Civil Appeals of Texas. Beaumont.

Sept. 27, 1951.

Rehearing Denied Jan. 31, 1952.
Second Motion for Rehearing Denied
Sept. 24, 1952.

O'Fiel & O'Fiel, Beaumont, for appellant.

W. O. Bowers, Jr., Beaumont, for appellee.

WALKER, Justice.

Appellees brought this suit against appellant to establish their title to land as the heirs of Everan Price, a feme sole. They will be referred to as plaintiffs, and the appellant, as defendant. The defendant claims title to the land under two instruments bearing different dates, which were executed by Everan Price and which, in form, are deeds, each conveying the land to defendant. Plaintiffs alleged that Everan Price made both deeds; that the first deed was a mortgage; and that the second deed was made to correct the description of land contained in the first deed. Defendant alleged, among other matters which may be omitted, that the first deed effected a conditional sale and that the second deed was an absolute conveyance.

The cause was tried to the court, sitting with a jury; and the trial court instructed the jury to render a verdict for the plaintiffs, and subsequently rendered judgment awarding plaintiffs the title to and possession of the land in suit, and awarding defendant the amount of the debt, interest and taxes paid by him. From this judgment defendant has appealed.

The land in suit had belonged to the parents of Everan Price and she had inherited her title from them. Her father had been a minister and his church and his dwelling were on this land. Everan Price resided there with her parents and continued to reside there after her parents died, until she moved away from the property in 1942. Everan Price and defendant Borden were Negroes.

For convenience, we shall refer to the two instruments executed by Everan Price as deeds.

The first of these two instruments was dated December 24, 1941. It recited a consideration of $128 and was, in form a conveyance to defendant, with general warranty, of land which is the land in suit.

On the same date and as a part of the same transaction, defendant executed and delivered to Everan Price the following paper:

"Beaumont, Texas, December 24, 1941.
Everan Price
Beaumont, Texas

"I hereby acknowledge that the deed which you gave to me covering the Lot No. 10 of the sub-division of the T. J. Russell tract in the A. Williams Survey, consisting of 2.38 acres, more or less, is intended as a mortgage, and when you pay me back the sum of $128.00 with interest, I then agree to re-convey to you the property hereinabove described. *This subject to repayment to me within — months from date. Otherwise the deed is absolute.*
Yours very truly,
/s/ E. H. Borden"

The last two sentences of this paper, which we have underlined, were written in longhand by the scrivener; we infer that the balance was typed.

Both Everan Price's deed and the defendant's agreement were prepared by a lawyer.

This deed was not recorded until after Everan Price's death. Everan Price died on May 3, 1943; and this deed was filed for record on May 25, 1943.

The description of the land conveyed by this deed is defective in some respects; and the second instrument executed by Everan Price corrects these defects. Also a deed in form, it contained a general warranty of title; and the purpose to be fulfilled by it and the consideration for it were described as follows:

"Whereas on the 27th day of December, 1941, I the undersigned, Everan Price,—did make, execute and deliver unto E. H. Borden,—a deed covering Lot Number Ten (10) of the Sub-Division of the T. J. Russell tract, in which said deed—the description was defective in so far as it did not accurately describe said Lot Number Ten (10) by metes and bounds in accordance with my intentions.

"Now therefore know all men by these presents: That I, Everan Price, a feme sole of said County and State, in consideration of the premises and the sum of Ten ($10.00) Dollars cash to me in hand paid by E. H. Borden, the receipt of which is hereby acknowledged and confessed, as well as the desire on my part to correct the description of said property so that the same will speak my intentions and accurately describe the said tract by metes and bounds. The tract of land which I intend to convey in the first above mentioned deed and which is conveyed herewith in this deed is described by metes and bounds as follows, to-wit:"

This deed was dated December 29, 1941, only five days after the date of the first deed, as was the grantor's acknowledgment. It was not filed for record until July 30, 1945.

The testimony concerning the statements and the conduct of Everan Price and defendant is not consistent and considered alone, tends to show either that Everan Price mortgaged the property to defendant or that she had made an absolute sale of it to him.

We have referred to the fact that both of the deeds under which defendant Borden claimed title were not filed for record until after Everan Price died.

Defendant proved that he rendered the land for taxation by the County for the year 1944 (the rendition sheet was dated January 4, 1944) and for the years 1945, 1946 and 1947, testimony concerning later years being excluded; and defendant proved that he had paid the taxes for these years. He also proved that on October 29, 1943 he had paid the taxes levied for 1943. All of these renditions and these payments were made after the death of Everan Price. Since this proof was made by defendant it is a reasonable inference that he did not

render the land for taxation prior to 1944 and that he paid no taxes prior to October 29, 1943, and thus, that he did not render the land for taxation and did not pay the taxes levied against the land during Everan Price's lifetime.

The witness Roberts, a lawyer, testified that "shortly after" Everan Price's death, the defendant "came to my office and said that he had advanced Everan Price and her family money to pay the taxes with and that he had a deed to the property, and that he understood that the property had been left" to a person whom the witness represented, and that if this person "would pay him his money back he would turn the deed over to her".

On the other hand, the witness D. W. Willie testified that Everan Price had told him she feared that she would lose the property because of the taxes charged against it, and that she subsequently expressed the intention of applying to defendant for money not only to pay these taxes but also to pay her living expenses. He testified further that she had expressed the intention of selling the property to the defendant, and that she also told him that she had sold the property to the defendant. It seems a reasonable inference from his testimony that she did not tell him she had sold the property to the defendant until after the date of the second deed.

The witness McDowell testified that in 1942, "he asked her about buying it and she told me I was just late; she had sold it to E. H. Borden."

The witness Willie also testified that Everan Price had moved her residence from the property to another place where she resided "it may have been close on to a year" before she died (on May 3, 1943). He testified further that she told him that she was going to move because "the people know that (defendant) had let her have money, and she was scared somebody would 'highjack' her." According to Willie's testimony, Everan Price must have removed from the land in suit in 1942, about May or June of that year; and it appears from the testimony of the witness McDowell that when he had his conversation with her in 1942 she resided at the place to which she had removed from the land in suit.

There is no evidence that anyone ever had possession of the property, or that the defendant ever exercised dominion over or made any use of the land in suit, after Everan Price moved away from this property. McDowell testified that at the time of his conversation with Everan Price in 1942, the property was vacant. A small building used for church purposes and three small houses originally stood on this property; and McDowell said that the church was "all torn down." From the testimony of Willie it appears that the church finally burned in 1948; and that a few days after this occurred someone unknown removed the houses and the fence from the property.

At the time of these depredations Willie was, he said, "supposed to see after the place" for the defendant, and he had been doing this for about a year. His employment by the defendant thus probably began in 1947. What he did for the defendant was not proved; it may be inferred that he occasionally acted as a watchman.

The defendant offered to prove by the scrivener that a "substantial sum" had been paid to Everan Price by defendant when the second deed was delivered to the defendant; and to this deed were affixed revenue stamps totaling $2.75. The testimony concerning the payment of money was excluded.

Defendant has assigned seven **Points of Error** for reversal. These points will be discussed in an order different from that adopted by the defendant.

Point 2 assigns as error that "the transaction between Everan Price" and the defendant was "shown to be a conditional sales contract and not a mortgage," which had become absolute by reason of a failure to exercise the option to repurchase in a reasonable time. This construction is reiterated in Point 5, which raises the four-year statute of limitations.

Points 2 and 5 are overruled. The transaction referred to in these two points is that of December 24th, and both points are founded upon a construction of the de-

fendant's agreement of that date. This agreement cannot be given the effect of a conditional sale because it does not state a definite time within which a right to repurchase the land might be exercised. See: Brannon v. Gartman, Tex.Com.App., 288 S.W. 817; Wells v. Hilburn, 129 Tex. 11, 98 S.W.2d 177. The scrivener's addition to defendant's agreement of a provision (the sentence next to the last) for stating a time limit upon the right to repay the sum advanced by defendant indicates that the parties considered the making of a conditional sale; but the parties' failure to write such a limit in the space provided shows prima facie that they decided against making such an agreement; and there was neither proof nor pleading that they ever had settled on any definite time within which to repay the money advanced. Defendant argues that the evidence concerning the acts and statements of the parties shows that the parties had construed this transaction to be a conditional sale; but this evidence actually tends to show either an absolute sale or no sale at all. One would not infer from this proof that the rights of Everan Price or the defendant were conditional.

These comments adjudicate Points 2 and 5; but assignments made in other Points of Error require the determination of the legal effect to be given the transaction of December 24th. It is to be borne in mind here that defendant's pleadings only state the legal effect of the various transactions and papers.

Since the transaction of December 24th cannot be construed to be a conditional sale, it must either have been abortive or else it must be given the legal effect of a mortgage; for the deed and the agreement of that date, construed together as they must be, having been elements of one transaction, show that the deed was not intended to be absolute; and indeed, the defendant does not contend that it was. Under the pleadings and the proof the transaction certainly cannot be treated as abortive. The only alternative, therefore, (on the particular record) would seem to be a construction of the transaction as creating a mortgage; and so it clearly appears to be on the face of the defendant's agreement of December 24th. The key word is "mortgage". See: Laird v. Weiss Bros., 85 Tex. 93, 23 S.W. 864. Defendant's agreement states that the deed was "intended as a mortgage" and the subsequent words "pay me back with interest" and "repayment" are appropriate to describe a loan. Since the paper was written by a lawyer, the word "mortgage" ought to be given its legal effect (unless the circumstances clearly show otherwise); and having gotten this far we can regard as affording some support to this construction the fact that the sum to be "paid back" was the consideration stated in the deed, and the fact that this sum was to bear interest, although these circumstances might not otherwise have been of weight. The only elements of the agreement which might be regarded as qualifying the word "mortgage" are the last two sentences which the scrivener added in longhand; but the scrivener did not eliminate the word "mortgage" or change the other words mentioned, and he did not write into the agreement a time limit upon the right to repay the debt. The defendant's execution and delivery of this paper, in this form, to Everan Price are thus consistent with a construction of the transaction as a "mortgage." The only parol proof which would be admissible under defendant's pleadings (other than proof that the transaction was a mortgage) is such as would explain the meaning of the words used in the deed and agreement of December 24th; and that which does not prove the transaction to have created a mortgage tends only to disprove defendant's written agreement—unless it be referred to the transaction of December 29th. However, the defendant does not deny that he signed the agreement of December 24th.

Our conclusion is that the transaction of December 24th appears on its face to be only a mortgage. See: Price v. Seiger, Tex.Com.App., 49 S.W.2d 729; Johns v. Hilburn, Tex.Civ.App., 64 S.W.2d 1009; Wells v. Hilburn, 129 Tex. 11, 98 S.W. 2d 177; Brannon v. Gartmann, Tex.Com. App., 288 S.W. 817; Eckford v. Berry, 87 Tex. 415, 28 S.W. 937; Jefferies v. Hartel,

Tex.Civ.App., 51 S.W. 653, affirmed 94 Tex. 649, 54 S.W. 242. Everan Price's declarations that she had sold the property to the defendant cannot be given the effect of changing the legal effect of this transaction without violating the parol evidence rule. See: Eckford v. Berry, 87 Tex. 415, 28 S.W. 937.

In Point 7 it is assigned as error that a debt from Everan Price to defendant had to be proved, but was not. Point 7 is overruled. It has sometimes been said that the existence of a debt must be proved before an absolute deed could be held to be a mortgage; but no particular sort of evidence to prove this fact has been required by the law; and the proof made has not been required to go beyond the issue in litigation. So, the defendant's declaration in his agreement of December 24th that the deed of that date was intended to be a mortgage necessarily implies the existence of a debt, created by an advancement to Everan Price on the date of the deed and agreement; and since the issue between the parties is one of title, this was as far as the proof had to go, except as plaintiffs' plea of tender required proof of the amount of the debt, and this sum was stated in the defendant's agreement of December 24th.

Points 1 and 6 are next to be considered. Point 1 assigns as error that the deed of December 29th, that is, the second deed made by Everan Price, was "shown upon its face to be an absolute deed whereby for a consideration recited therein, Everan Price conveyed to (defendant) the tract of land in controversy." Point 6 assigns error to the exclusion of testimony by the scrivener that "at the time of the execution and delivery of the deed of—December 29, 1941—a substantial sum of money was paid Everan Price by (defendant) as the consideration for such land conveyed, it being contended by (defendant) that the last transaction was an absolute deed."

Points 1 and 6 depend upon the construction to be given the deed of December 29th and the effect of this construction upon the admissibility of parol proof concerning extrinsic matters.

These two points are overruled. The deed of December 29th purports to be, and must therefore be construed to be, only a deed of correction. It is not ambiguous. The statement of a nominal cash consideration (and the consideration of $10 stated in the deed was only that) does not indicate that the deed was intended to change the parties' rights or that it was intended to have any effect other than that of correcting the description of the land conveyed by the first deed. We note that the form for a correction deed in Stayton's Annotated Texas Forms (No. 3750), which represents the standard practice, provides for the statement of a nominal cash consideration, as well as for the usual tenendum and habendum clauses and the usual covenants. The revenue stamps which were affixed to the deed were not a part of the deed and cannot be considered in determining whether the deed was ambiguous.

A correction deed has been given a definite legal effect. Generally, it relates to the date of the agreement which it purports to express more accurately; and in Doty v. Barnard, 92 Tex. 104, 47 S.W. 712, at page 713, the court said: "The deed from J. W. and Sarah Doty to H. H. Rowland was made to correct the defects and imperfections of the deed above referred to, and had the same effect upon the rights of the parties that a judgment of court would have had if entered at the suit of Rowland." See, also, Humble Oil & Refining Co. v. Mullican, 144 Tex. 609, 192 S.W.2d 770; Thorndale Mercantile Co. v. Continental Gin Co., Tex.Civ.App., 217 S.W. 1059.

Consequently, parol proof which tends to show that a deed which is, in words, only a correction deed and which is not ambiguous, was actually intended to change the terms of the parties' original agreement is in direct conflict with the legal effect of the correction deed. Such proof would show that the parties made a new contract instead of a correction deed. It would therefore be inadmissible under the parol evidence rule because the provisions of the deed which fix and declare the nature of the deed as being only an instrument of correction are contractual

terms and are more than a statement of facts concerning the consideration given for the deed. Thus in Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825, at page 827, where the husband had made a deed to his wife reciting a consideration of $500 "paid by [the wife] out of her separate funds, and for her separate use and benefit", the court said of this provision: "The statement in the deed from Kahn to his wife is more than the mere statement of a fact. Under the decisions referred to, its legal effect is to show the character of the right to be created by his deed, and is as much a contractual recital as any in the instrument, and belongs to that class of particular and contractual recitals which, in deeds, estop the parties from denying them." This reasoning is applicable here. And see McKivett v. McKivett, 123 Tex. 298, 70 S.W. 2d 694; Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977.

The deed of December 29th therefore cannot be regarded as having altered the nature and legal effect of the transaction of December 24th, because it must be construed to be only a correction deed, which only restated more completely and accurately the description of the land purportedly conveyed by the deed of December 24; and since the deed of December 24 was only a part of a mortgage, the excluded testimony of the scrivener was inadmissible, because this testimony tended to show that the deed of December 29 was not a correction deed and that it did change the rights of the parties under the mortgage of December 24. It is held that evidence which violates the parol evidence rule is incompetent. 17 Tex.Jur. 793 (Sec. 353). So, the particular ground for exclusion which was stated to the trial court was immaterial.

Since the deed of December 29th was plainly an instrument of correction, the absence of a defeasance, written or in proof, is of no significance. And see: Thorndale Mercantile Co. v. Continental Gin Co., supra.

The excluded testimony of the scrivener was really only cumulative. The declarations of Everan Price that she had sold the property are referable to the deed of December 29th, as, of course, are the revenue stamps affixed to that deed; but this evidence also cannot be applied to the deed without violating the parol evidence rule.

■ These comments adjudicate all Points of Error except Points 3 and 4, and these two have been considered and are overruled. The matter assigned in No. 3 is the trial court's refusal to strike Beard's testimony. Beard testified about the heirship of Everan Price and her parents. Plaintiffs derive their title by inheritance from Everan Price, who inherited it from her parents; and Beard's testimony was necessary proof of the plaintiffs' title. Both Beard and a recorded affidavit of Everan Price, See Art. 3597a, show that he had a brother named Everett Price; and plaintiffs have invoked the presumption of death declared by Art. 5541, R.S.1925, as the basis for their recovery of the interest in the land which Everett Price, instead of Everan Price, might otherwise have inherited. Point 3 seems to be this, that all of Beard's testimony should have been stricken because plaintiffs did not prove that they had tried to find out what had become of Everett Price. The absence of such evidence could not effect the admissibility of Beard's testimony concerning heirship. Further, such proof was not a prerequisite to the application of Art. 5541, 13 Tex.Jur. 519, (Sec. 5). Further, plaintiffs were at least co-tenants of Everett Price and could enforce their rights in this suit without accounting for the absence of Everett Price. Point 4 assigns as error that the judgment of the trial court awards plaintiffs a tract of land not described in the petition; but we construe the description in the two documents as referring to the same tract of land.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

■ We made the statement in that part of our opinion which discusses defendant's Point 3 that "plaintiffs were at least co-tenants of Everett Price and could enforce their rights in this suit without accounting for the absence of Everett Price." In the argument in his motion for rehear-

ing, defendant points out that plaintiffs are collateral heirs of Everan Price and had to show that Everett, the brother of Everan, did not inherit Everan's interest in the property in suit, and that consequently they could not be Everett's co-tenants.

This argument is sustained and we withdraw the statement quoted from our opinion. The plaintiffs are descendants of a maternal uncle of Everan Price, and to prove their title, had to prove either that Everett Price did not inherit anything from his sister Everan or that they had inherited Everett's title. They are claiming title under Everan and so could not be co-tenants with Everett Price. See: Sections 3 and 4 of Article 2570, Vernon's Ann.Tex.Civ.St.

However, this conclusion and the withdrawal of the statement quoted from our opinion do not affect our judgment. As we understand Point 3 and the argument made thereunder, and the Bill of Exception referred to in this argument, the defendant's bottom complaint is that the proof is not sufficient to raise a presumption of Everett's death because there is no evidence that Everett had been searched for and not found; and we remain of the opinion that this evidence was not necessary to create the presumption of death for which Article 5541, Vernon's Ann.Tex.Civ.St. provides.

The argument in defendant's brief under Point 3 ends with these two sentences: "In Turner v. Sealock, 21 Tex.Civ.App. 594, 54 S.W. 358, the Court held that Article 5541, R.S. of Texas, 1925, does not apply where no absence from the State of Texas is shown. There is no competent evidence in the record that this court can accept going to show the absence from his residence of Everett Price." However, the language of Article 5541 simply does not require absence from the State; and we construe the last sentence of the two just quoted as being a conclusion drawn from the argument that plaintiffs failed to show a search and absence from the State.

These seem to be the only attacks which defendant has made upon the sufficiency of the evidence to prove that Everett Price was dead, and that his death occurred be-fore Everan Price died. Other matters stated in the motion for rehearing have been considered but do not require additional comment. The motion for rehearing is overruled.

On Second Motion for Rehearing.

Defendant's second motion for rehearing has been considered and is overruled. Concerning the construction of Article 5541, Vernon's Ann.Civ.St. see: Sovereign Camp Woodmen v. Ruedrich, Tex.Civ. App., 158 S.W. 170; Thetford v. Modern Woodmen, Tex.Civ.App., 273 S.W. 666; Wells v. Margraves, Tex.Civ.App., 164 S. W. 881; Heralds of Liberty v. Fern, Tex. Com.App., 296 S.W. 498, and Goodson v. Goldsmith, 131 Tex. 418, 115 S.W.2d 1100.